## SAPULPA REFINING CO. v. SAPULPA, Adm'r.

No. 11628—Opinion Filed Dec. 6, 1921.

(Syllabus.)

1. **Master and Servant — Duties of Master —Safe Place and Tools—Liability for Injuries.**

It is the duty of the master to use ordinary care to provide a reasonably safe place in which his servant may perform his work, and reasonably safe tools and appliances with which to work, taking into consideration the character of the work to be performed and the danger therefrom, and this duty cannot be delegated by the master so as to relieve him of liability for injuries resulting from its violation.

2. **Negligence—Damages—Proximate Cause —Jury Question.**

Damages, to be recoverable for negligence, must appear to be the proximate result of the negligence shown, and the question as to what is the proximate cause of an injury, or what is the immediate or proximate result of a given act, is generally one of fact for the jury.

3. **Negligence — Contributory Negligence and Assumption of Risk—Jury Question.**

By the provisions of article 23, sec. 6, of the Constitution of this state, the defense of contributory negligence or of assumption of risk is in all cases whatsoever a question of fact, and shall at all times be left to the jury, and the finding of the jury upon this defense is conclusive upon the court.

Error from District Court, Creek County; Mark Bozarth, Judge.

Action by Wm. A. Sapulpa, administrator of the estate of Charles E. O'Shields, against the Sapulpa Refining Company for damages for negligent death. Judgment for plaintiff, and defendant brings error. Affirmed.

Geo. L. Mann, Don Walker, and Geo. L. Burke, for plaintiff in error.

Ernest B. Hughes, Earl Foster, and W. H. O'Dell, for defendant in error.

NICHOLSON, J. This action was brought by Wm. A. Sapulpa, administrator of the estate of Charles E. O'Shields, deceased, as plaintiff, against the Sapulpa Refining Company, as defendant, to recover damages for the death of Charles E. O'Shields caused by an explosion in the defendant's plant. The amount of damages sought was $45,000 as the pecuniary loss

for the death of Charles E. O'Shields, and $5,000 for his pain and suffering.

The deceased was a man about 38 years of age, and his expectancy was shown to be 29.62 years. At the time of his death he was in the employ of the defendant as a "gang pusher," whose duties were to have charge of a gang of common laborers who did odd jobs about the defendant's refinery. These jobs consisted of all work that the superintendent or plant foreman directed them to do so, such as digging trenches, laying pipe, removing pipe, carrying material, etc.

On the day of the accident, the deceased was by the direction of the superintendent or plant foreman, with the men under him, engaged in removing from in front of a battery of stills pipes which connected several stills, and known as by-passes. These pipes consisted of a 4-inch line running in front of a battery of stills, and at each still a "T" was placed in this line, and in the stem of this "T" was a gate valve. There was also a gate valve in the line of pipe between each still. The purpose of these by-passes was that the gate valve could be closed between any two stills and the gate valve opened into any one or more of the stills, and permit the oil being conveyed through said pipe to pass into any still desired. These by-passes were in front of a battery of ten stills. There had been new by-passes placed in the rear of these stills, and those on which O'Shields and his men were working had not been used for about 18 months. The testimony discloses that the deceased was unfamiliar with this particular kind of work, and that he had never worked on these by-passes or any like them before. He and his men were furnished with tools and two buckets and were told as they took down these by-passes to drain the oil therefrom and catch it in these buckets. On the day preceding the day of the accident they had taken down one of the by-passes, in which they found some heavy, thick oil which would not run out until the pipe had been stood on end. At that time the fire under the stills had been turned out. On the day of the accident the fire had not been turned out under some of the stills. The men, with the exception of the deceased, were working on a platform about 14 feet high and almost above the fire under the stills. In taking down these by-passes, the deceased instructed his men to take off one of the gate valves in the main pipe in front of

these stills, and in doing this it was necessary to use a sledge hammer to loosen the valve from the pipe. When the valve was loosened highly explosive oil began to flow from the pipe in such quantities that the same could not be caught in the buckets in use, but overflowed on the ground in front of the still, and an explosion resulted, from which several of the men were burned, and the deceased and another man died from their injuries. The deceased was not on the platform, with the other men, but was on the ground directing the work. It is disclosed that before the valve was removed one of the men employed on the scaffold requested the still man, in charge of the stills, to turn out the fire, but this was not done. It is further disclosed that the still man and his helper were the only employes of the company who had authority, under the custom, regulations, and rules of the company, either to turn out or light the fires under the stills.

A verdict was returned in favor of the plaintiff for the sum of $16,000, upon which judgment was entered, and to reverse which this proceeding in error was instituted.

Various assignments of error are made, but counsel for plaintiff in error argue but two propositions: First, that there was no competent evidence tending to establish primary negligence on the part of the defendant proximately causing the injuries complained of; and, second, that the evidence conclusively establishes contributory negligence on the part of the deceased.

The plaintiff bases his case upon the contention that the defendant failed to use ordinary care in furnishing the deceased a reasonably safe place in which to work, while the defendant insists that it did furnish the deceased a safe place in which to work, but that such place was rendered unsafe by the careless, improper, and negligent way he conducted the work to be done, and that the danger and hazard of the work was created by the fault and negligence of the deceased, and not of the defendant, and urges that the trial court erred in overruling the demurrer of the defendant to the evidence of the plaintiff, and in overruling its motion for an instructed verdict in its favor.

It was the duty of the defendant to use ordinary care to furnish the deceased and its other servants with a reasonably safe place in which to work and reasonably safe appliances with which to work, taking into

consideration the character of the work to be performed and the dangers therefrom, and this duty could not be delegated by the defendant so as to relieve it of liability for injuries resulting from a disregard of such duty. Great Western Coal & Coke Co. v. Malone, 39 Okla. 693, 136 Pac. 403; Bartlesville Zinc Co. v. Prince, 59 Okla. 141, 158 Pac. 627; Rock Island Coal Mining Co. v. Davis, 44 Okla. 412, 144 Pac. 600; Sulsberger & Sons v. Castleberry, 40 Okla. 613, 139 Pac. 837; Gypsy Oil Co. v. Green et al., 82 Okla. 147, 198 Pac. 851.

The evidence shows that the deceased and the men working under him were directed to remove these by-passes; that the same were in front of the stills, and that it was necessary to work on a platform about 14 feet above the ground and almost above the fire under the stills; that the defendant failed to turn out the fire; that the defendant furnished the deceased and the other servants with two 12-quart buckets with which to catch the oil as it flowed from the pipes when the same were disconnected, but that the buckets were insufficient to hold the oil, and that it overflowed, falling in front of the fire, causing the explosion which resulted in the injury and death of Charles E. O'Shields.

The defendant insists that the work could have been done in comparative safety by using the valves in the by-pass line and first draining it of any oil through the valves, and as the deceased did not do this, but ordered the valve taken off without first testing the line by simply opening the valve to see if the line contained any oil, that his action in removing the valve was the proximate cause of the injury. The question of what is the proximate cause of an injury or what is the immediate or proximate result of a given act is generally one for the jury. Atchison, T. & S. F. Ry. Co. v. St. Louis & S. F. Ry. Co., 41 Okla. 80, 135 Pac. 353; Producers' Oil Co. v. Eaton, 44 Okla. 55, 143 Pac. 9; St. Louis & S. F. Ry. Co. v. Darnell, Adm'x, 42 Okla. 394, 141 Pac. 785.

It cannot be seriously contended that the defendant was not negligent in permitting the fire to burn under the stills while the men were removing these by-passes. Neither can it be successfully contended that the defendant furnished the deceased and other servants working with him a reasonably safe place in, which to work, and the evidence fully justified the jury in finding that the defendant violated its duty toward the deceased in this regard, and that its negligence in failing to turn out

the fire under the stills was the proximate cause of the injury. Had there been no fire, there would have been no explosion.

It is next urged by the defendant that the death of Charles E. O'Shields was caused by his own negligence in converting a reasonably safe place in which to do the work into an unsafe one, but this question was submitted to the jury, and under article 23, sec. 6, of the Constitution of this state the defense of contributory negligence or assumption of the risk is at all times to be left to the jury. St. Louis & S. F. Ry. Co. v. Boush, 68 Oklahoma, 174 Pac. 1036; Dickinson v. Cole, 74 Oklahoma, 177, Pac. 570, 251 U. S. 54, 64 L. Ed. 133; Wichita Falls & N. W. Ry. Co. v. Groves, Admr., 81 Okla. 34, 196 Pac. 677. It follows that the trial court did not err in overruling the demurrer of the defendant to the evidence of the plaintiff and in denying its motion to direct a verdict in its favor.

The question of the assumption of the risk is not raised, and no complaint is made of the court's instructions to the jury; therefore, we must presume that the questions of both primary and contributory negligence were submitted to the jury under proper instructions.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

HARRISON, C. J., and PITCHFORD, McNEILL, and ELTING, JJ., concur.