Terry ANDERSON and Marie
Anderson, Appellants,

v.

NORTHWESTERN ELECTRIC COOP-
ERATIVE, an Oklahoma corporation;
and McGraw–Edison Company, A Dela-
ware corporation, Appellees.

No. 66402.

Supreme Court of Oklahoma.

July 12, 1988.

John M. Merritt and Celia A. Roony, Oklahoma City, for Terry Anderson, and Marie Anderson, appellants.

Murray E. Abowitz, Oklahoma City, for Northwestern Elec. Co-op., Inc., appellee.

Robert D. Nelson, Oklahoma City, for McGraw–Edison, Co., appellee.

KAUGER, Justice.

On certiorari, the appellants, Terry and Marie Anderson, present two issues for determination by this Court:[1] (1) whether under the facts of this case, the grant of summary judgment constituted a violation of the Oklahoma Constitution, art. 23, § 6;[2] and (2) whether material issues of fact existed making the entry of summary judgment by the trial court inappropriate.

We find that: (1) contradictary facts existed on the issue of assumption of the risk, rendering the grant of summary judgment a violation of art. 23, § 6; and (2) disputed issues of fact were presented making the award of summary judgment inappropriate.

## FACTS

On October 5, 1983, the appellant/truck operator, Terry Anderson, was operating a winch truck equipped with gin poles approximately thirty feet in length in an attempt to replace a windmill head on the property of Verne Null in the rural regions of Harper County, Oklahoma. He had succesfully removed the old head from the windmill and was attempting to maneuver into position to raise the new head when the truck's gin poles came into contact with overhead electricity distribution lines owned and maintained by the appellee, Northwestern Electric Cooperative.

Marie Anderson, the truck operator's wife, was standing on the running board of the truck when the incident occurred and told her husband that the poles were in contact with the electric lines. At her husband's insistence, Mrs. Anderson jumped from the truck. When she hit the ground she could see a grass fire burning under the vehicle and yelled to her husband. At that point, he also jumped from the truck. Neither of the Andersons were injured

---

1. Although other issues were raised on appeal, the two issues addressed are the only ones properly preserved on certiorari. The issue of comparative negligence was not raised on appeal or on certiorari. However, 12 O.S.1981 § 984 providing penalties for violation of the so-called "6–foot rule" of 12 O.S.1981 § 983 has been construed by the Tenth Circuit to allow a utility to recover indemnity only for the percentage of total liability for which the violator is comparatively negligent. See, *East Central Electric Coop. v. Robert Gordon Equip., Inc.,* 772 F.2d 662, 664 (10th Cir.1985). The appellants allege that the electric company violated standards of the National Electric Safety Code. It is possible that a trier of fact might determine that the accident would not have occurred if the electrical lines had been in compliance with safety standards or it might find the electric company comparatively negligent. This issue is not before us at this time.

2. Okla. Const. art 23, § 6 provides:
   "The defense of contributory negligence or of assumption of the risk shall, in all cases whatsoever, be a question of fact, and shall, at all times, be left to the jury."

when they exited the vehicle. Anderson sent his wife to a nearby farmhouse to call for assistance.

In order to remove the old millhead, Anderson had used a propane powered welding torch mounted to the winch truck. Anticipating that he might have to use the torch again in order to install the new millhead, he did not turn the valve on the propane tank to its closed position. When Anderson jumped from the truck and saw the fire, he feared that the propane tank would explode if the valve were not sealed off. After sending his wife for help, he attempted to reach the valve to the propane tank to turn it off. It was at this point that Anderson was injured. As he reached for the propane tank, he was severely shocked and burned. Burns covered thirty-eight percent of his body and portions of both his legs were amputated along with fingers from both hands. Terry Anderson has been unable to work since the accident occurred.

The Andersons filed suit against the appellee, Northwestern, on November 28, 1984, alleging that the electric company's negligent maintenance and supervision of their electrical lines was the proximate cause of Anderson's injuries. McGraw–Edison, manufacturer of a 35 amp reclosure unit, which Anderson alleged should have cut power to the electric lines once the gin poles came in contact with them, was joined as a defendant by amended petition on October 3, 1985. Joinder was premised on the theory that the company had breached both express and implied warranties of fitness under the Uniform Commercial Code.

On February 18, 1986, Northwestern filed a motion for summary judgment on grounds that the undisputed facts showed that they were entitled to judgment as a matter of law. After argument on the motion, the trial court granted Northwestern's motion on March 28, 1986, on the basis that the facts showed that Terry Anderson had voluntarily assumed the risk of injury when he reached to turn off the

valve to the propane tank knowing that the gin poles were entangled in the electric lines. At the hearing, McGraw–Edison placed its oral motion for summary judgment on the record asking leave to adopt as its own the arguments and pleadings of Northwestern. McGraw–Edison later filed a written statement stipulating for purposes of the motion for summary judgment that the reclosers were defective in design and/or manufacture, and that the defects were the proximate cause of the plaintiff's injuries.

The Andersons filed a motion for reconsideration of the motion for summary judgment on April 7, 1986; but on May 27, 1986, the trial court sustained its prior ruling as it pertained to Northwestern and granted the motion for summary judgment previously filed by McGraw–Edison. On appeal, the Court of Appeals affirmed the trial court's grant of summary judgment on the basis that Terry Anderson voluntarily assumed the risk of injury by returning to his truck to attempt to turn off the valve to the propane tank.

I

SUMMARY JUDGMENT ON THE ISSUE OF ASSUMPTION OF THE RISK CONTRAVENES THE OKLAHOMA CONSTITUTION, art. 23, § 6, WHERE THE PLAINTIFF PRESENTS FACTS TENDING TO CONTRADICT A FINDING OF VOLUNTARY ASSUMPTION OF A KNOWN RISK.

The Oklahoma Constitution, art 23, § 6, requires that the defense of assumption of the risk "shall *in all cases* whatsoever, be a question of fact, and shall, *at all times, be left for the jury.*" This mandatory language has been strictly followed.[3] However, two narrowly defined judicial exceptions to the absolute rule of submission of the issue to the trier of fact have developed. These exceptions are set forth in *Flanders v. Crane Co.*, 693 P.2d 602, 606 (Okla.1985), upon which both the appellants

---

**3.** *C.R. Anthony Co. v. Williams*, 185 Okl. 564, 94 P.2d 836, 838 (1939); *Joy v. Pope*, 175 Okl. 540, 53 P.2d 683, 686 (1936); *St. Louis–San Francisco Ry. Co. v. Robinson*, 99 Okl. 2, 225 P. 986–87 (1924); *Sapulpa Refining Co. v. Sapulpa*, 84 Okl. 93, 202 P. 780, 782 (1921).

and appellees rely as authority for their positions. In *Flanders*, we stated the general principle that in cases where assumption of the risk and contributory negligence are issues, art. 23, § 6, requires that they always be submitted to a jury except under two narrowly defined situations: (1) where a plaintiff fails to present evidence tending to show primary negligence on the part of the defendant; or (2) where, upon the undisputed facts, reasonable people exercising fair and impartial judgment could not reasonably reach different conclusions concerning the issues.[4]

The appellees argue that Terry Anderson falls within both exceptions to the general rule that assumption of the risk should be left to the trier of fact. Northwest and McGraw–Edison first allege that the Andersons failed to show any evidence of primary negligence on the part of either the electric company or the manufacturer; and, second, that under the undisputed facts reasonable minds could not fail to find that Anderson assumed the risk of injury when he returned to his truck to try and shut off the valve of the propane tank knowing that the gin poles were in contact with the power lines.

## A
### PRIMARY NEGLIGENCE

■ On the first issue—primary negligence—the appellants attached to their brief in opposition to the motion for summary judgment an affadavit by an expert in the field of electricity enumerating five areas in which he felt violations of good engineering practices and negligent operation and maintenance by Northwestern and McGraw–Edison contributed directly to Anderson's injury.[5] The appellees argue that this statement was insufficient to show any indication of primary negligence on their parts because the electrical lines were a mere condition which a negligent plaintiff encountered.[6] However, the expert's statements indicate that good engineering practices require some minimal protection to the general public. This evidence alone was sufficient to survive the appellees' motion for summary judgment on the issue of negligence.

## B
### POSSIBILITY OF DIFFERING CONCLUSIONS

■ Northwestern and McGraw–Edison next argue that no issue was raised on assumption of the risk because reasonable persons exercising fair and impartial judgment could not have found that Anderson did not assume the risk of injury when he returned to his truck knowing that the gin poles were in contact with the power lines. However, the defense of assumption of the risk applies only where the person alleged to have assumed the risk is found to have known or have been charged with knowl-

---

**4.** *Flanders v. Crane Co.*, 693 P.2d 602, 606 (Okla. 1985).

**5.** The five areas where the expert witness felt primary negligence of the defendants was in evidence were:
   (1) where phase-to-phase distribution lines existed, there should have been prompt de-energizing once the lines came into contact with each other;
   (2) that faulty operation of the reclosers was due to lack of maintenance (this assumption was supported by testimony of an employee of Northwestern which indicated that these units were changed out after having operated 2,000 times while standards existed recommending that these same units be removed once they had been tripped 50 times);
   (3) that the recloser itself was faulty because had it been working properly the chain ex-

tending from the truck to the ground should have caused enough current to have tripped a properly functioning relay;
   (4) that the overall plan for protection against electrical injuries of Northwestern was inadequate in its use of single rather than three-phase reclosers which could have been utilized at a comparable cost and provided additional protection against electrocution; and
   (5) that routing of the electrical lines in an area of a windmill was in and of itself negligent in that it violated standards of good engineering practices.

**6.** Because summary judgment was improperly sustained and the cause must be remanded, we need not decide whether "the creation of a condition theory" will survive in the days of comparative negligence.

edge of the danger.[7] Additionally, familiarity with existing physicial conditions which are responsibile for a party's injury or mere knowledge of the danger without full appreciation of the risk will not bar recovery.[8]

Terry Anderson testified that he was not sure that the electricity was off when he attempted to turn off the propane valve. However, he also testified in his deposition that he did not believe that he would be electrocuted when he reached for the propane valve because: (1) although the gin poles were entangled in the electrical lines when he and his wife initially jumped from the truck, neither of them suffered any injury; (2) that a metal cable was dragging from the back of the truck which he believed should have grounded the vehicle sufficiently to cause the breaker switches to be thrown; and (3) that the initial sparking and hissing of the lines when the truck first came into contact with them had ceased making him believe that the lines were no longer hot. These beliefs, coupled with expert testimony indicating that his assumptions were not totally unreasonable, presented sufficient facts to create some doubt as to how reasonable people might determine the issue of assumption of the risk.

■ There is another principle which militates against an award of summary judgment. Anderson testified that the reason for reaching to turn off the propane tank was to avoid what he believed could be a serious explosion if the propane in the tank became ignited. Persons placed in a situation of sudden emergency may act in good faith according to their best judgment to avoid disaster. Failure to act in a judicious manner under those circumstances will not amount to negligence per se.[9] A jury might find that Terry Anderson's actions constituted a necessity rather than a voluntary assumption of the risk of injury.

Because the facts in evidence raised both the issue of primary negligence of Northwestern and McGraw–Edison and because evidence existed which might be construed to militate against the finding of a voluntary assumption of the risk of injury, no exception existed to avoid the general rule mandated by art. 23, § 6, the issue of assumption of the risk is a fact question for the jury.[10]

## II

## DISPUTED ISSUES OF FACT MAKE AN AWARD OF SUMMARY JUDGMENT INAPPROPRIATE.

Contradictory facts were in evidence both on the issue of the primary negligence of Northwestern and McGraw–Edison and on the issue of assumption of the risk. Summary judgments are not favored in the law [11] and are appropriate only where no question of material fact remains to be resolved.[12] Even when the basic facts are undisputed, motions for summary judgment should be denied, if under the evidence, reasonable persons might reach different inferences or conclusions from the undisputed facts.[13] The existence of disputed facts concerning negligence of the appellees and assumption of the risk made

**7.** *Briscoe v. Oklahoma Natural Gas Co.* 509 P.2d 126, 128–29 (Okla.1973); *Davis v. Whitsett,* 435 P.2d 592, 599 (Okla.1967).

**8.** *Jack Healey Linen Serv. Co. v. Travis,* 434 P.2d 924, 927 (Okla.1967).

**9.** *Oklahoma Producing and Refining Corp. v. Whalen,* 88 Okl. 173, 212 P. 745–46 (1923); *Oklahoma Producing and Refining Corp. v. Freeman,* 88 Okl. 166, 212 P. 742, 744 (1923).

**10.** Okla. Const. art. 23, § 6, see note 2, supra.

**11.** *Flanders v. Crane Co.,* see note 4 at 605, supra; *Love v. Harvey,* 448 P.2d 456, 462 (Okla. 1968).

**12.** *Garner v. Johnson,* 609 P.2d 760, 762 (Okla. 1980).

**13.** *Anderson v. Falcon Drilling Co.,* 695 P.2d 521, 524 (Okla.1985); *Wilds v. Universal Resources Corp.,* 662 P.2d 303, 307 (Okla.1983); *Gilmore v. St. Anthony Hosp.,* 598 P.2d 1200, 1202 (Okla. 1979); *Weeks v. Wedgewood Village, Inc.,* 554 P.2d 780, 784 (Okla.1976); *Runyon v. Reid,* 510 P.2d 943, 946, 58 A.L.R.3d 814, 818 (Okla.1973). See also, *Ross v. City of Shawnee,* 683 P.2d 535–36 (Okla.1984).

the award of summary judgment inappropriate.

CERTIORARI GRANTED; OPINION OF THE COURT OF APPEALS VACATED; TRIAL COURT REVERSED; CAUSE REMANDED.

DOOLIN, C.J., and HODGES, OPALA, ALMA WILSON and KAUGER, JJ., concur.

SIMMS, J., concurs in result.

HARGRAVE, V.C.J., and LAVENDER, J., dissent.