2013 OK CIV APP 103

**DIRECT TRAFFIC CONTROL, INC., Plaintiff/Appellant,**

v.

**Savona KIDD, Defendant/Appellee.**

No. 110076.

Court of Civil Appeals of Oklahoma, Division No. 2.

June 19, 2013.

Phillip P. Owens, II, Chris Harper, Inc., Edmond, OK, for Plaintiff/Appellant.

David B. Donchin, R. Ryan Deligans, Kaci L. Trojan, Durbin, Larimore & Bialick, Oklahoma City, OK, for Defendant/Appellee.

JANE P. WISEMAN, Judge.

¶ 1 Direct Traffic Control, Inc. (DTC) appeals from the trial court's orders entering judgment upon a jury verdict in favor of Savona Kidd in this vehicular negligence action and awarding attorney fees to Kidd. The issues on appeal are whether the trial court erred when it denied DTC's motion for directed verdict, instructed the jury, and awarded attorney fees and costs to Kidd. Finding no error, we affirm the orders of the trial court.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 DTC filed suit against Kidd alleging that on August 17, 2009, Kidd lost control of her vehicle while traveling westbound on I–40 and hit DTC's "sign which was being used for traffic control." [1] DTC contends that as a result of Kidd's negligence, DTC "is entitled to damages for replacement of impact attenuator" which it asserts to be in the amount of $15,301.25, plus interest, costs, and attorney fees.

¶ 3 In her answer, Kidd admitted that an accident occurred but denied the remainder of DTC's allegations. Kidd asserted that she "was confronted with a sudden emergency and acted as a reasonable and prudent person in light thereof." She also asserted that the "accident was caused or contributed to by the negligence of third persons over whom [Kidd] had no control."

¶ 4 During the jury trial held on September 12, 2011, DTC presented the testimony of Timothy Wade Murphy, who has been employed with DTC for 12 years. Murphy testified that DTC installs "traffic signs and safety devices and stripe[s] highways" in Oklahoma, Arkansas, and Kansas. DTC is normally a subcontractor working for a prime contractor building bridges and highways. Relevant to this case, DTC contracted with Oklahoma Bridge Company for the placement of an impact attenuator device at the location in question.

¶ 5 The purpose of the attenuator is "[t]o protect a blunt end of a barrier wall." DTC contracted to leave the attenuator at the site through the end of construction. Once the attenuator was damaged, it had to be removed and replaced. Murphy testified the attenuator was replaced within two days after Kidd hit it at a cost of $15,301.25.

¶ 6 On cross-examination, Murphy stated that the lawsuit was filed because Kidd hit the attenuator. The only information Murphy had regarding what caused Kidd to hit the attenuator was contained in the police report. After looking at the report, Murphy stated: "The Trooper wrote in his report, that, 'Driver stated that a vehicle swerved in front of her to exit off on May Avenue. Vehicle 1 swerved left to avoid striking that vehicle.'" Kidd's attorney asked Murphy, "Do you have any information, other than what your attorney has told you, that Ms. Kidd took any improper action?" Murphy answered, "No." Murphy testified that DTC paid $14,000 for impact attenuators that DTC was putting on the site.

¶ 7 Kidd testified that on August 17, 2009, she was following Jordan Housley to his house. She had not taken any medication that day. She stated that she smoked pot on an ordinary day but not every day and had not smoked pot on the day of the accident because she was sick. Kidd testified that she was not familiar with Oklahoma City and after she left her sister's house to go to Housley's house, she did not remember how she got to I–40. Before the accident occurred, she was on I–40 heading westbound. She did not know how far Housley was in front of her, but she could still see his taillights and there were no cars between her car and Housley. Kidd testified that she was traveling in the lane closest to the shoulder at about 60 miles an hour with no traffic in front of her. Suddenly a black pickup came up to her left side going faster than she was. When the pickup came up beside her, "it was easing on up ... [b]ut it cut her off ... to get over off on the exit of May." It crossed in front of her across her lane from the center lane.

¶ 8 Kidd testified that "it all happened in an instant, it was so fast." The truck sped up and "pretty much cut [her] off." The truck did not collide with her vehicle and she could not say how far in front of her the truck was. She said, "I just know that he was beside me, came up fast, cut me off, and I just made a quick reaction." She hit her brakes to keep from striking the pickup but does not remember if she let go of the steering wheel. She "freaked out" when the truck cut her off and did not see the attenuator before she struck it. The truck made her go

---

**1.** It is unclear whether Kidd also hit a sign or only an impact attenuator. DTC sought recovery for damage to an attenuator.

right toward the shoulder as it cut her off, and then seeing the yellow attenuator, she "made a quick reaction" and turned her wheel to the left "to keep from hitting [the attenuator], but [she] hit it anyway."

¶ 9 On cross-examination, Kidd testified that she was scared when the truck cut her off as it went from the center lane off to the right to exit. The truck never pulled directly in front of her where she was following him down the highway. Kidd did not slam on her brakes, but she put her foot on the brake and turned her steering wheel. When she realized she was about to hit the yellow barrier, she turned to the left to avoid it but still ended up hitting it. The impact flipped her car around until she was facing oncoming traffic on the highway. She said it was something that happened quickly and she "did the best [she] could."

¶ 10 DTC called Gary Hightower, a trooper for the Oklahoma Highway Patrol, as a witness. He was dispatched to the accident scene at approximately 1:39 a.m. The weather was clear and the roads were not wet. Kidd told him that a black vehicle had cut her off, but Hightower did not see skid marks from the middle lane coming over. He did see skid marks into the attenuator. Hightower stated that if a vehicle swerves over to an exit, there will not always be skid marks.

¶ 11 The attenuator is approximately 5 to 10 feet off the shoulder. When asked if Kidd would have missed the attenuator if she had driven straight, Hightower stated, "If she drives straight in her lane then ... she would miss the attenuator." Hightower did not determine Kidd's speed before the accident.

¶ 12 On cross-examination, Hightower stated that the way Kidd explained the situation to him, if she had kept going straight, she could have hit the truck. The truck left the scene of the accident site. Hightower had no indication Kidd was impaired or that she was exceeding the speed limit. Later, Hightower testified that a car can travel across a lane of traffic in less than a second.

¶ 13 At the close of DTC's case, the trial court overruled Kidd's demurrer to the evidence. After Kidd presented no additional evidence, the trial court overruled DTC's motion for directed verdict.

¶ 14 Before instructions were given to the jury, DTC objected to Instructions No. 2, 3, 16 and 19 because they pertained to sudden emergency, which DTC asserts does not exist under Oklahoma law. The trial court deleted references to sudden emergency being an "affirmative defense," but overruled DTC's objections to including sudden emergency in the instructions. The jury returned a verdict in favor of Kidd. DTC now appeals.

## STANDARD OF REVIEW

¶ 15 This Court will review *de novo* the denial of DTC's motion for directed verdict. *Computer Publ'ns, Inc. v. Welton,* 2002 OK 50, ¶ 6, 49 P.3d 732, 735.

¶ 16 "We review assigned errors in jury instructions to consider whether the instructions in their entirety accurately reflect the law and whether it is reasonably evident that the jury was mislead [*sic*] by an erroneous instruction." *Gilbert v. Security Fin.Corp. of Oklahoma, Inc.,* 2006 OK 58, ¶ 2, 152 P.3d 165, 171.

¶ 17 "When the reviewing court reviews the reasonableness of an attorney fee, it uses the abuse of discretion standard. However, when the reviewing court reviews the question of whether an attorney fee is authorized by law, it uses the *de novo* standard." *Okmulgee Cnty. Rural Water Dist. No. 2 v. Beggs Pub. Works Auth.,* 2011 OK CIV APP 103, ¶ 6, 263 P.3d 971, 973.

## ANALYSIS

### I. *Motion for Directed Verdict*

¶ 18 DTC asserts trial court error in denying its motion for directed verdict. DTC argues that Kidd admitted at trial that she lost control of her vehicle when she attempted to avoid what DTC characterizes as a "phantom vehicle." DTC states that Kidd "cannot articulate how close this other vehicle was to her or what exactly she did to try and avoid it." It notes that Kidd stated she " 'freaked out' " and lost control of her vehicle. DTC claims, "The investigating

trooper testified that there was no physical evidence that another vehicle was there." DTC asserts that the only reasonable inference is that Kidd was at least one percent negligent and therefore the matter should not have been submitted to the jury.

¶ 19 We disagree. "It is axiomatic that the mere fact that an injury occurs carries with it no presumption of negligence." *Gillham v. Lake Country Raceway,* 2001 OK 41, ¶ 7, 24 P.3d 858, 860. In a negligence action, "the burden is on the plaintiff to show the existence of negligence, and that negligence was the proximate cause of the injury." *Id.*

The question of proximate cause is for the jury unless there is no competent evidence from which the jury could reasonably find a causal nexus between the act and the injury. A motion for directed verdict raises the question of whether there is any evidence to support a judgment for the party against whom the motion is made, and the trial court must consider as true all the evidence and inferences reasonably drawn therefrom favorable to the non-movant, and disregard any evidence which favors the movant.

*Id.*

¶ 20 To establish negligence, DTC was required to show "(1) the existence of a duty on the part of the defendant to protect the plaintiff from injury; (2) a violation of that duty; and (3) injury proximately resulting therefrom." *Consolidated Grain & Barge Co. v. Structural Sys., Inc.,* 2009 OK 14, n. 8, 212 P.3d 1168. If we, as we are required to do, take as true all the evidence and inferences favorable to Kidd and disregard all the evidence favorable to DTC, there is evidence to support a verdict in Kidd's favor. Kidd's collision with and damage to the attenuator do not *ipso facto* establish that she was negligent. The trooper's testimony about the absence of skid marks showing that the truck exited the highway does not automatically lead to the conclusion that it did not happen. The trooper testified that there are not always skid marks if a vehicle swerves over to exit.

¶ 21 We conclude the trial court did not err in submitting the case to the jury. There is competent evidence to support the jury's determination that Kidd was not negligent, even if that evidence consists solely of Kidd's testimony regarding the black truck. A "jury is the trier of the facts and decides the weight and credibility to be given to the testimony." *Kansas City S. Ry. Co. v. Marrow,* 1958 OK 90, ¶ 13, 326 P.2d 817, 820.

## II. Jury Instructions on Sudden Emergency

¶ 22 DTC next asserts the trial court erred in instructing the jury on the issue of sudden emergency. DTC cites 12 O.S.2011 § 577.2:

Whenever Oklahoma Uniform Jury Instructions (OUJI) contains an instruction applicable in a civil case or a criminal case, giving due consideration to the facts and the prevailing law, and the court determines that the jury should be instructed on the subject, the OUJI instructions shall be used unless the court determines that it does not accurately state the law. Whenever OUJI does not contain an instruction on a subject on which the court determines that the jury should be instructed, the instruction given on that subject should be simple, brief, impartial and free from argument. Counsel for either party or parties shall have a right to request instructions by so requesting in writing.

DTC asserts that giving an instruction on sudden emergency violates the directive in OUJI not to give such an instruction and constitutes error. The instruction given to the jury on sudden emergency, Instruction No. 16, states:

You are instructed that where a person finds herself confronted with an emergency which was not contributed to by her own negligence, such person has the right to do what appears to her at the time she should do, so long as she uses reasonable care under the circumstances, and if she does so, she will not be deemed to have been negligent even though it might afterwards appear that some other course of action would have been better.

Jury Instruction No. 2, the statement of the case, also mentions sudden emergency and

states that Kidd "denies she acted in a negligent manner, and asserts she was confronted with a sudden emergency and reacted in a reasonable manner under the circumstances." DTC also objected to this instruction, to Instruction No. 3, and to submitting a pink verdict form (a verdict form in Kidd's favor) to the jury for the same reason.

¶ 23 DTC notes that the Oklahoma Uniform Jury Instructions specifically address sudden emergency at Instruction No. 10.10 which provides, "[N]o instruction should be given." The comment to No. 10.10 provides:

> The Oklahoma Supreme Court recognized the doctrine of sudden emergency in *Anderson v. Northwestern Elec. Coop.*, 760 P.2d 188, 192 (Okla.1988) ("Persons placed in a position of sudden emergency may act in good faith according to their best judgment to avoid disaster."); and *Justice v. Harrison*, 569 P.2d 439, 441 (Okla.1977) (affirming judgment where sudden emergency instruction was given). The basis of the sudden emergency doctrine is that the standard of care required of a party depends on the particular circumstances, and the circumstances would include whether an emergency exists. The requirement in Instruction No. 9.2 that a party must act with the care that a reasonably careful person would use under the circumstances means that a party faced with an emergency situation is permitted to act differently than he would under ordinary circumstances. *Thus, the sudden emergency doctrine is already incorporated into the general instructions on negligence, and giving a separate instruction might mislead the jury into believing that it is an affirmative defense on which the defendant would have the burden of proof. [Cf.] Anderson v. Jennings*, 813 P.2d 539 (Okla.Ct.App. 1991) (doctrine of sudden emergency is not an affirmative defense, but instead it requires the jury to evaluate a party's conduct in light of the emergency presented).

(Emphasis added.)

¶ 24 DTC cites *Anderson v. Jennings*, 1991 OK CIV APP 33, 813 P.2d 539, in which the Court of Civil Appeals reviewed the giving of a sudden emergency instruction which stated:

> You are instructed that under Oklahoma law a sudden emergency is when, without conduct on the part of the defendant, she is suddenly and unexpectedly placed in a situation requiring instant action without exercise of deliberate judgment. One faced with a sudden emergency is not negligent because she acts according to her best judgment or fails to act in the most judicious manner.
>
> *If you find that the defendant ... was faced with a sudden emergency you must find in favor of the defendant.*

*Id.* at ¶ 7, 813 P.2d at 540 (emphasis added). The Court found it was reversible error to give this instruction, noting that in *Justice v. Harrison*, 1977 OK 154, 569 P.2d 439, the Oklahoma Supreme Court placed "its stamp of approval upon an instruction directed to 'sudden emergency', where there was evidence tending to support that defense." *Id.* at ¶ 11, 813 P.2d at 540. The *Anderson* Court noted, however, that "in *Justice*, the trial court did not instruct the jury that if it found the defendant was faced with a sudden emergency it must find in his favor." *Id.* The *Anderson* Court stated, "Plaintiff points to no decision and we find none, wherein the Oklahoma Supreme Court approved an instruction totally exempting a party from liability for negligence if the party is faced with a sudden emergency." *Id.* at ¶ 12, 813 P.2d at 541. Unlike the instruction in *Anderson*, the sudden emergency instruction in *Justice* stated:

> You are instructed that where a person finds himself confronted with an emergency which was not contributed to by his own negligence, such person has the right to do what appears to him at the time he should do, so long as he uses reasonable care under the circumstances, and if he does so; he will not be deemed to have been negligent even though it might afterwards appear that some other course of action would have been better.

*Id.* at ¶ 11, 813 P.2d at 541.

¶ 25 The *Anderson* Court stated, "An instruction such as given in *Justice v. Harrison* ... would be proper if the evidence supports it. However to require the jury to find in favor of Defendant if he was faced

with a sudden emergency is error." *Id.* at ¶ 13, 813 P.2d at 541. The instruction given in the present case is identical to that given in *Justice.* Unlike *Anderson,* the trial court here did not instruct the jury that it must find in Kidd's favor if it found that she was faced with a sudden emergency.

¶ 26 However, this does not end the discussion. We agree with DTC's statement in its brief on appeal that "the Supreme Court, by its adoption of the OUJI, has long since determined that no instruction should be given on the issue of sudden emergency." The trial court here concluded that it would give instructions referring to sudden emergency but without instructing that sudden emergency constituted an affirmative defense. It concluded that pursuant to the OUJI directive, sudden emergency was not an affirmative defense. The trial court noted, "There's certainly a question of fact on all this, so that's why they're getting instructions on this, so they understand."

¶ 27 The question is whether giving such an instruction in this instance requires reversal. DTC contends that the jury was misled and that "[t]he sudden emergency instruction is the only explanation for the jury's verdict," thereby, it contends, meeting the general test that but for the erroneous instruction, the jury would have reached a different result. *Myers v. Missouri Pacific R.R. Co.,* 2002 OK 60, ¶ 29, 52 P.3d 1014, 1029; *see also Covel v. Rodriguez,* 2012 OK 5, ¶ 26, 272 P.3d 705, 716 ("The test of reversible error in giving jury instructions is whether the jury was misled to the extent of rendering a different verdict than it would have rendered if the errors alleged had not occurred.").

¶ 28 Certainly without any reference to sudden emergency, the jury could have concluded that Kidd was not negligent because she acted as a reasonable person would have in the exercise of ordinary care when a vehicle cut her off exiting the highway. Kidd's testimony was that she lost control of her vehicle after another vehicle cut in front of her. The general OUJI negligence instruction given here as Instruction No. 5 provides, " 'Negligence' is the failure to exercise ordinary care to avoid injury to another's person or property. 'Ordinary care' is the care which a reasonably careful person would use under the same or similar circumstances.' " Following this general negligence instruction, the jury could find in Kidd's favor, concluding that DTC failed to prove she was negligent or concluding that she was not negligent based on evidence that Kidd did what a reasonably careful person would do under the circumstances confronting her.

¶ 29 No sudden emergency instruction was needed because the issue before the jury was adequately covered by the uniform instructions on negligence. However, we conclude that its inclusion was not reversible error. General negligence principles encompass the concept of sudden emergency, as stated in the comment to OUJI Instruction 10.10, because these principles require examination of the circumstances then present and a determination of whether Kidd used ordinary care under those circumstances. It is clear from the approach delineated in the Uniform Instructions that sudden emergency constitutes merely a denial of negligence, not an affirmative defense with a burden of proof or some theory requiring separate mention or treatment. When the evidence raises a question of confrontation with a sudden emergency, it should be treated as just such a denial.

¶ 30 In our role as a reviewing court, we consider the instructions as a whole. "We inquire on review whether the instructions reflect the Oklahoma law on the relevant issue, not whether the instructions were perfect." *Myers v. Missouri Pacific R.R. Co.,* 2002 OK 60, ¶ 29, 52 P.3d 1014, 1029. It appears from the jury's unanimous use of the pink verdict form in Kidd's favor that they found no negligence on her part when she collided with the attenuator. We conclude that, as directed by Uniform Instruction No. 10.10, no sudden emergency instruction should have been given, but further conclude that DTC has failed to show that the jury was misled by the instruction and rendered a verdict it would not have otherwise.

¶ 31 After examining the record, we find no basis on which to believe the jury was misled by the sudden emergency instruction,

nor has it been shown that the jury would have reached a different verdict had the instruction not been given. The instructions complained of do not require reversal and retrial.

### III. Attorney Fees and Costs

¶ 32 Finally, DTC asserts trial court error in awarding attorney fees and costs to Kidd as the prevailing party. Because we affirm the judgment, we reject DTC's argument that Kidd is no longer entitled to attorney fees and costs as the prevailing party pursuant to 12 O.S.2011 § 940.

 ¶ 33 DTC further asserts that the attorney fee award was not proper because Kidd failed to comply with the requirements of *State ex rel. Burk v. City of Oklahoma City*, 1979 OK 115, 598 P.2d 659, when she failed to provide any time records with her motion for attorney fees. DTC states, "Records were only provided with the Amended Motion for Attorney Fees, filed more than 60 days after the Journal Entry and far outside the thirty day time requirement of [12 O.S.] § 696.4."

¶ 34 This Court in *Act South, LLC v. Reco Electric Co.*, 2013 OK CIV APP 23, 299 P.3d 505, recently addressed the issue of whether time records must be presented with an application for attorney fees. We concluded:

> We know from *Burk* that an application for attorney fees must be supported by presentation to the trial court of detailed time records showing the work performed. The presentation of time records means either submission with the application or a later submission to the trial court before or upon a hearing of the request for fees.

*Id.* at ¶ 22, 299 P.3d at 510. The fact that Kidd did not include time records until she filed an amended motion does not preclude her from recovering attorney fees.

¶ 35 DTC contends that excessive fees were charged and that the time records submitted were inadequate because they were reconstructions rather than copies of time records actually billed to Kidd's insurance carriers. DTC does not cite authority to support its claims of improper documentation and excessive fees. "Argument without sup-

porting authority will not be considered." Oklahoma Supreme Court Rule 1.11(k)(1), 12 O.S.2011, ch. 15, app.1.

### CONCLUSION

¶ 36 DTC failed to show that the trial court erred when it denied DTC's motion for directed verdict or awarded attorney fees. We also find no reversible error by the trial court in its instructions to the jury. Accordingly, we affirm.

¶ 37 **AFFIRMED.**

BARNES, V.C.J., and FISCHER, P.J., concur.