## CHICAGO, R. I. & P. RY. CO. v. SHELTON.

No. 17702.   Opinion Filed Jan. 22, 1929.

W. R. Bleakmore, A. T. Boys. and John Barry, for plaintiff in error.

Madden & Hubbell, for defendant in error.

HALL, C. The essential facts in this case are as follows: The plaintiff in error, the defendant in the court below, is a common carrier of passengers operating a system of steam railways. At the town of Walters, in this state, plaintiff purchased a railway ticket over defendant's railway to some other town or place. At the proper time, on the arrival of the train, by permission of the persons in charge of the train, plaintiff got on or boarded the train and walked some distance down the aisle of the coach and located a vacant seat and sat down. Within a very short while, and before the train started, she attempted to get up on her feet and walk over to a window on the opposite side of the car; and as she took her first step she stepped on some foreign object which was shown to be a cylindrical piece of carbon surrounded with metal, being the positive pole of an ordinary dry cell battery. The object had a disposition to roll, and she was thereby tripped and fell, striking the arm of one of the seats and then falling to the floor, thereby receiving certain injuries hereinafter noted.

When the conductor learned of the accident or injury, he came in and gave her all the assistance he could towards making her comfortable until she reached her destination. At her destination she was carried out of the car, placed on a stretcher and put in the baggage room, and a physician by the name of Dr. Halstead was immediately summoned by the railroad company. Plaintiff was then removed to her father's home, in that town, and this doctor treated her for two weeks. The injuries which she apparently suffered were general prostration,

slight bruises, and a miscarriage which occurred four days after the injury. Both plaintiff and her mother testified that plaintiff's health had not been good since the injury. Dr. Halstead, the only expert witness who testified and who was introduced by the plaintiff, testified there were no complications, and that the injuries were not grave in their nature, and there was no reason why the plaintiff would not or did not recover from the effects of the miscarriage within ten days or two weeks. She brought an action alleging damages in the sum of $2,950. The jury awarded her a verdict for damages against defendant for the sum of $1,000.

The defendant introduced testimony to the effect that the train for passenger-carriage purposes consisted of one coach for whites and one for negroes, and that the crew consisted of a conductor and two brakemen, and also a news "butcher," who was not in the employment of the railway company, but that he looked and searched for objects such as soda-pop bottles and papers on the floor of the coaches. All these witnesses testified that on the day of the injury, and prior thereto, they made a careful search for articles between the seats and in the aisles and none were found.

(1) The defendant first contends that no primary negligence on its part was shown. (2) It next contends that the court committed error in instructing the jury that defendant was bound by a high degree of care instead of "ordinary care." (3) The third objection relates to the action of the court in rejecting certain evidence in the nature of disclosures and communications which plaintiff had made to her physician in the course of his professional conduct in treating plaintiff at a time prior to the injuries complained of.

For convenience, we will first address ourselves to the second proposition, the instruction given relating to the degree of care, and the instruction refused.

On this point the instructions complained of read as follows:

"No. 2. The law makes it the duty of a carrier of passengers for hire to use the utmost care to provide reasonably safe means for its passengers going in and out of its passenger coach, including reasonably safe aisles and passageways in the cars. * * *

"No. 4. On the contrary, if you find from the testimony that the defendant did not know of the presence of the cylindrical piece of metal or dry-cell of an electric battery, and you further find that by the exer-cise of a **high** degree of **reasonable care** it would not have found the same in time to have prevented injury to the plaintiff then you should find for the defendant." (Emphasis ours.)

The contention of defendant is without merit. Our statutes prescribe the only degree of care by which a common carrier of passengers, in this state, is governed. The sections of the statute (sections 4891 and 4892, Comp. Okla. Stat. 1921) are as follows:

"Sec. 4891. A carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill.

"Sec. 4892. A carrier of persons for reward is bound to provide vehicles safe and fit for the purposes to which they are put, and is not excused for default in this respect by any degree of care."

The just preceding section, however, is not involved in this case.

These statutes, especially section 4891, supra, have been quoted and literally followed by every case before this court where the question was involved. Some of the cases are: C., R. I. & P. Ry. Co. v. Dizney. 61 Okla. 176, 160 Pac. 880; C., R. I. & P. Ry. Co. v. Forrester, 72 Okla. 8, 177 Pac. 593, 8 A. L. R. 163; Sand Springs Ry. Co. v. Westhaver, 92 Okla. 89, 218 Pac. 525; Muskogee Electric Traction Co. v. Bolin, 105 Okla. 142, 232 Pac. 105.

Regarding this rule, the Supreme Court of the United States, in the case of Indianapolis, etc., Ry. Co. v. Horst, 93 U. S. 291, 23 L. Ed. 898, said that:

"This rule of law has its foundation deep in public policy. It is approved by experience, and sanctioned by the plainest principles of reason and justice. It is of great importance that courts of justice should not relax it."

Learned counsel for plaintiff in error cite numerous cases from the courts of several states, and from the federal courts, to the effect that, in order to prevent an injury under such circumstances as are involved in the present case, such as injuries caused by obstructions and foreign objects on the approaches and in the passageways and in the aisles of its vehicles, the carrier is only required to use "ordinary care." These cases doubtless announce the rule in those particular jurisdictions, but are of but little assistance to the courts of this state. Under our law relating to the carriage of

passengers (other than the provision therein of section 4892, C. O. S. 1921, which provides that for certain omissions of the carrier therein stated, a carrier of passengers for a reward is not excused for any degree of care), there is but one standard of care, and that is "utmost care."

Several other states have similar statutes differing somewhat in phraseology, but the great majority have no direct or express legislation on the subject. The single standard of care as provided by our statute and fully recognized by our courts does not mean that in point of fact the same degree or quantum of care should be applied in every case; because from the very nature of things, the facts in the different cases differ, and therefore the quantum or amount of care in point of fact is relative. Therefore, it may be said that "utmost care" ebbs or flows with the dangers to be anticipated by a man of the utmost degree of prudence, from the surrounding circumstances and the conditions involved in each case. For example, the acts of care and precautions to prevent an injury which the highest degree of prudence would suggest and which would be regarded by a jury as proper under circumstances indicating little danger, might be regarded as wholly and entirely inadequate under conditions and circumstances which would disclose the presence of dangerous agencies and objects likely to endanger life and destroy valuable property. But these matters under all circumstances are for the jury. The quantum or amount of care, the precautions to be observed, the dangers to be anticipated, the safeguards to be used, the efforts to be exercised to prevent injury, in each case must be as different and variable as the facts involved in the different cases are different; and it is not practical nor proper for a court to fix and declare as a matter of law the amount or quantum of care that should be exercised under the circumstances or conditions of any particular or special case. That question rests with the jury, under proper instructions from the court, which under our law is "utmost care," which means the highest degree of care. In applying this standard of care to the facts of the particular case, the jury is confronted with this question: In consideration of the duty imposed by law, what would a person of a high degree of prudence have regarded as necessary or proper under the circumstances?

It will be observed that the court's instructions as a whole were more favorable to defendant than the law required. Instead of framing the instructions to impose on defendant the utmost or highest degree of care, the court limited that term by the expression **"high degree of reasonable care."** That instruction lowered the standard of care fixed by law, because "reasonable care," in law, at least, means the same as "due care" or "ordinary care."

The question of primary negligence which is challenged by defendant in this case is not without some merit. The defendant has cited and quoted at length from numerous authorities to the effect that, in the character of cases to which the present case belongs, the presumption of negligence on the part of the carrier does not arise upon the plaintiff showing only the accident or injury, and that such injury occurred in the carrier's vehicle, although after the plaintiff, the passenger, has delivered himself for safe carriage to the carrier. These cases hold: (1) That the carrier is bound by only "ordinary care"; and (2) that in order to make out a prima facie case it is incumbent upon the plaintiff to show that the carrier had actual notice of the agency which brought about the injuries, or that such obstruction or agency remained in the vehicle or the approaches thereto for such a length of time as to impart notice to the carrier.

A majority of the courts are in accord with this doctrine. But it is significant that practically all, if not all, of these cases were decided in jurisdictions where only "ordinary care" is required to measure up to the degree of duty to avoid such acts of negligence as are involved in the present case.

This case does not rest upon the presumption of negligence arising from the mere fact that the passenger was injured by stepping on, and to some extent, a dangerous object upon the floor of the passenger coach in which she was traveling as a passenger. But instead, by reason of the fact that under our law carriers of passengers for hire are bound by the highest degree of care to guard against perils of such nature as are involved in the present case, the court properly submitted the matter to the jury, as it was a question for the jury to determine from the direct testimony and surrounding circumstances whether or not the defendant by the exercise of the utmost care for the safety of its passengers should have discovered and removed the object before the passenger was injured by it.

In the present case, negligence probably

could not be predicated upon the theory that there was a failure to furnish a sufficient number of persons to make safe the passageways and aisles of the cars, which was the basis of negligence in the case of Houston Electric Co. v. Bragg (Tex. Com. App.) 276 S. W. 641; but the jury could have, and doubtless did conclude that the two brakemen and the one conductor on duty failed to exercise the utmost care, else the object would have been removed and injury from that source averted.

Upon a similar issue, in the case of Houston Electric Co. v. Bragg, supra, the court, in the first paragraph of the syllabus, said:

"Whether exercise of high degree of care required of street car company to prevent injury to passenger required it to furnish person to see that aisle was free of obstructions would depend upon conclusions which reasonable minds would reach from the facts, and if reasonable minds might differ, failure to furnish such person would be predicate upon which negligence could be based."

The case of Chicago, K. & W. R. Co. et al. v. Ransom, 56 Kan. 559, 44 Pac. 6, to some extent illustrates the theory upon which the case was submitted to the jury. This case involved an injury to a passenger caused by a collision between two trains on different railroads at a railway crossing. In discussing the question, the court said:

"* * * That the engineer brought his train to a full stop at the proper distance from the crossing, gave the customary signal, and started forward, assuming that the persons in charge of the Missouri Pacific train would concede his right to make the crossing first; that the engineer and other employees of the plaintiff in error performed all their duties; that the injury is chargeable solely to the neglect of the employees of the Missouri Pacific Company, and that it alone is liable for the plaintiff's injuries. The fallacy of the position of counsel lies in the assumption that the employees of the plaintiff in error had performed their full duty to passengers on their train, when they had done everything necessary to entitle them to go ahead over the crossing in advance of the train on the other road, and were absolved thereafter from all duty to look after the safety of the passengers. Persons charged with the conduct of a train carrying passengers are not so lightly relieved of responsibility. No such easy limits to their care can be allowed. * * * The jury may have regarded it as a want of that high degree of care due to a passenger for the engineer of the Chicago, Kansas & Western to start towards the crossing when he saw another train in motion towards it, and that he should have waited until he saw that they actually did what he assumed they would do,—come to a full stop. They may, and doubtless did, regard it as the duty of the engineer, in case he saw fit to start towards the crossing, to keep close watch of the Missouri Pacific train, and to have stopped his train unless it was clear that he could pass the crossing in safety."

The third proposition urged by defendant is without merit. The testimony which defendant offered to prove by Dr. House, plaintiff's family physician, concerning the condition, extent and duration of plaintiff's injuries, was identical with the testimony of Dr. Halstead, whose testimony was introduced by the plaintiff, and by which she was bound. The testimony of Dr. Halstead was the only expert testimony introduced by plaintiff, and she was bound by it. Therefore, there could be no error in rejecting that portion of the testimony of Dr. House, in substance, identical with the testimony of Dr. Halstead.

That portion of the testimony of Dr. House which related to information which he had gained in the course of his professional relationship in treating plaintiff before her alleged injury was inadmissible, and did not approach the rule announced in the case of Roeser v. Pease, 37 Okla. 222, 131 Pac. 534, and other cases on the same subject. It is to be observed that plaintiff offered herself as a witness, but she did not give any voluntary testimony concerning the condition of her health prior to the injury. She neither testified generally nor specifically as to any prior complaint or ailment. Her only testimony in this connection was on cross-examination, wherein she testified that she had had a miscarriage seven or eight years before the injury occurred. Pertaining to the rule under discussion, testimony given on cross-examination is not voluntary testimony. Jones' Commentaries on Evidence (2nd Ed.) vol. 5, sec. 2197.

If the rule were otherwise, plaintiff testified to no fact justifying or authorizing an impeachment. The only purpose of introducing the physician is not for the purpose of curiosity, but for the purpose of impeaching the witness. In this case the plaintiff testified favorably to defendant, and there would be no cause for impeachment.

For the reasons herein stated, the judgment of trial court is hereby affirmed.

BENNETT, TEEHEE, HERR, DIFFENDAFFER, and JEFFREY, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 10 C. J. p. 856, §1296; 4 R. C. L. p. 1150; 1 R. C. L. Supp. p 1282; 4 R. C. L. Supp. p. 308; 5 R. C. L. Supp. p. 267; 6 R. C. L. Supp. p. 287; 7 R. C. L. Supp. p. 140. (2) 10 C. J. p. 965, §1381. (3) 10 C. J. p. 1025, §1426; anno. 19 A. L. R. 1372; 4 R. C. L. p. 1188; 1 R. C. L. Supp. p. 1290; 4 R. C. L. Supp. p. 310. (4) 40 Cyc. p. 2401.