**JOY v. POPE et al.**

No. 26221.   Jan. 21, 1936.

Hatcher & Bond, for plaintiff in error.

Melton & Melton, for defendants in error.

PER CURIAM. This is an appeal from the district court of Grady county, Okla., wherein the plaintiff recovered judgment against defendant on the 23rd day of October, 1934, for the sum of $2,000. Said judgment was rendered upon the verdict of the jury signed by eleven jurors. To reverse the judgment, the defendant brings this appeal. We will refer to the parties in this case as they appeared in the trial court.

The plaintiff is widow of Frank Pope, and prosecuted this action in her own behalf and on behalf of the three minor children of Frank Pope. The action was based upon the negligence of the defendant, the result of which it was claimed caused the death of Frank Pope on or about the 24th day of October, 1933, while the said Frank Pope was performing his duties in the employ of defendant.

Defendant operated the Chickasha Compress at Chickasha, Okla., and Frank Pope was employed at the time of his death as a band shover at said compress. The operation of the compress machinery is quite complicated; for the purpose of a general _outline as to how the compress operated, with particular reference to Frank Pope's work, we will quote a part of the plaintiff's petition, with some changes and omissions, however, which we make therein, to wit:

"In compressing of baled cotton, such machinery so being used, being substantially as follows:

"A large stationary iron or steel block substantially supported by large iron beams, said block being about 60 inches long and 24 inches wide, and being about six feet above the surface of the platforms located on each side thereof. Below such large block is an iron follow block of the same size, and located about two inches below the platform on each side thereof, which moves up and down in the process of compressing such cotton, such follow block being controlled by steam. On each side of such follow block platform, doors about six feet wide and about eight feet long are attached to hinges, and which platform doors raise with the follow block, and by the same power which operates the follow block; under the platform doors are steel doors about the same size, which are attached to hinges on each side of the follow block, and are operated at the same time the follow block and the platform doors are operated, and by the same power. That as such platform doors raise, the end nearest the follow block rises, and the steel doors rise from the opposite end. On each side of the platform doors, there is a small platform about six feet long and eighteen inches in width and being level with the surface of the top of such platform doors. The doors and follow block are operated by an engineer, who sits in a cab immediately east of the, east end of the follow block, and about eight or ten feet from the east end thereof. * * *

"The operation necessary to compress baled cotton, by the use of such machinery above described, is as follows: The bale of cotton is placed on the small press, called a dinky press. From the bale so placed in such press, the ties are removed, and for the purpose of preventing the bagging from becoming loose, small steel or wire hooks about 24 inches long are fastened in the bagging, near the ends of the bale. The bale is then trucked on to such platform door and dumped upon the follow bock in position to be compressed. Before the power is applied for compression of the cotton, the employee stationed on the small platform immediately east of the door, is required to remove the steel hooks from the bale, and in doing so, such employee is forced to step from the small platform onto the platform door and remove such hooks and step back on the small platform before the machinery which operates the doors and follow block is started."

The decedent, Frank Pope, was engaged in his duties as a band shover, with which band or bands the compressed bale of cotton was tied into a smaller bale. There were also other servants around the machinery among whom was one known as the head sewer, whose duty it is to get the bagging around the bale in position and sew it. We here quote from defendant's opening statement to the jury as further explanation of the operation:

"Mr. Hatcher: Now, then, Mr. Melton is right when he says there is a dinky press right out here. The evidence will show when these cotton bales come from the gin, you put them in this dinky press, press them out to take the ties off. They undo the ties and pull all of them off of it, and then, if they are using short bagging it is necessary

to use a couple of hooks, about that long. They are common, ordinary wire hooks, probably about the size of a pencil. * * * We will have some of those hooks, * * * with just a little hook on the end of them, and they put those hooks in the bagging, where the bagging is short, just merely to hold the bale together until a man can take a wheelbarrow and bring it here and push it in * * * the 'press feeder' they call him.

"Well, the press feeder takes that right on in there. Mr. Melton is right when he says there is three band shovers on this side and there is three tiers on the other side. One of those band shovers works right there (indicating on model) and one there, and one stood in the middle between; each one shoves through three bands—there are nine bands on one of these compressed bales of cotton.

"Now, before they can shove those through someone has to push them through to them and three men on the other side are the ones that do the tying. The tyers push through to the band shovers and the tyers—this platform on this side and the platform on the other side always work together—they come up and go down at the same time. When this man over here, this press feeder, brings his bale of cotton and he starts on there, with a bale of cotton, on a little hand truck, one of these little hand dump trucks, kind of like a wheelbarrow, he comes in there with a bale of cotton—now, I think the evidence is going to show that if there is a hook on the hind side of this bale of cotton, as it comes in on that side, it would be on this side (indicating) when the bale was straightened up—if there is a hook there, this band shover here, it is his duty to walk in there with this man as he takes the bale in, and as this bale dumps out, if he can take the hook off with one hand there, his left hand if he can just take it off and step back over there (indicating) he does it. If he cannot get it, if for some reason it does not come loose, it is just a hook, why let it alone, and that the head tier out here will either get it or anybody can get it, and it wouldn't make any difference whether anybody got it or not—there is dozens of them nobody gets and they just drop down under there (indicating) or hang on, nothing can be hurt, it is just a piece of wire."

The defendant denied generally and specifically the allegation of negligence of plaintiff's petition and pleaded contributory negligence and assumption of risk on the part of Frank Pope.

Defendant has appealed and assigned as error that no primary negligence of defendant was shown and that there was therefore nothing to submit to the jury. Also, that certain instructions were improper.

1, 2. We must determine in this case whether the plaintiff has pleaded and presented evidence of primary negligence on the part of defendant, sufficient to go to the jury, or whether the trial court should have sustained the defendant's demurrer to plaintiff's evidence and rendered judgment for defendant thereon. This question is substantially what the defendant relies upon in this appeal.

The plaintiff's case as developed from the evidence is substantially based upon the proposition that the method of operation by requiring the band shovers (Frank Pope) to work in a dangerous and unsafe place, "grabbing the hooks," was careless and negligent when the hooks could be grabbed by the head sewers in a safe place and without danger, and that Pope was killed while "grabbing hooks" as he was instructed to do. Substantial evidence to that effect was presented. The court properly submitted this evidence to the jury for their consideration and decision; for the court to have held otherwise and sustained a demurrer to plaintiff's evidence, would, in effect, be holding that the master is not responsible for providing a safe method of operation of business, which business by its nature is attended with hazards. It is the master's duty to provide a reasonably safe method for the performance of servant's work and this duty is nondelegable; the neglect of such duty composes a liability for resulting injury. Cosden Pipe Line Co. v. Berry, 87 Okla. 237, 210 P. 141. There was sufficient evidence for consideration of the jury as to the primary negligence of defendant in this case in failing to provide a safe method of operating the press. As was pointed out in the said case of Cosden Pipe Line Co. v. Berry, quoting:

"There is not much difference in calling it the method of doing the work and calling it an unsafe place to work. If the defendant failed to provide a safe method of doing the work, this in effect was the same thing as failing to provide a safe place in which to work."

It is true that the master is not required to superintend and direct the manner of the execution of minor details of the work. We do not think that the method providing for the servant's work in this case could be classified as a minor detail. Under section 6, art. 23 of the Constitution of Oklahoma, the questions of contributory negligence and of assumption of risk are questions of fact to be left to the jury to determine, and cannot become law questions.

3. The plaintiff outlined in her petition the general manner of operation of the compress. Plaintiff presented detailed evidence as to how the compress was operated, even to the extent of preparing a miniature model of the compress for reference in the trial. Whether this compress as operated constituted a dangerous instrumentality is a question of fact for the jury. See Chickasha Cotton Oil Co. v. Roden, Tenth Circuit Court of Appeals, 66 F. (2d) 127; also, Hunter v. Northern Iowa Brick & Tile Co., (Iowa) 136 N. W. 515.

4. The petition of plaintiff contains several allegations of negligence which were not proven at the trial; among these were allegations that the machinery and appliances were negligently constructed and maintained. No proof was offered by plaintiff to substantiate these allegations. The proof affirmatively shows that the machinery and appliances used by the defendant in this compress were of the most modern type. The plaintiff did, however, make other allegations of negligence of the defendant in the operation of the machinery, and that the machinery was made unsafe by defendant's method of operation. The plaintiff, as before stated, outlined in her petition the operation of the compress and the part Frank Pope performed; in addition thereto plaintiff made the following allegations, to wit:

"Plaintiff alleges that the machinery and appliances hereinabove described, and the construction and operation thereof, in the manner herein alleged, was highly dangerous, and which danger was not known to plaintiff's decedent, and could not by the exercise of ordinary care have been ascertained by him. * * * And said defendant was guilty and negligent in the maintenance and operation of the machinery and appliances as herein alleged; that the construction and operation of such machinery and appliances, in the method and manner herein alleged, constituted the same highly dangerous, and said defendant wholly failed in its duty to plaintiff's decedent as hereinabove set out."

If plaintiff has established negligence in the method provided by defendant for his servants to do their work as being the proximate cause of Frank Pope's death, it is not necessary that other allegations in the petition of other negligence be proven. There is evidence, although disputed by the defendant, that it was the defendant's method of operation for the band shover (Frank Pope) to "reach in and get the hooks," and there is also evidence that such method is not a reasonably safe way of operation, and that another method is available, that is, for the head sewer or head tyer to get the hooks, and that he can do so without danger to himself. The record disclosed in this case that the jury went to the compress and watched the same in operation. We hold that there was sufficient evidence of primary negligence of defendant in the method of operating his compress for consideration of the jury; and we see no reason or justification to disturb the decision of the jury.

The defendant's second proposition, that the court erred in giving instructions 6, 7, and 8, is also answered contrary to the contentions of defendant for the reasons hereinbefore set out pertaining to defendant's first proposition.

The judgment is therefore affirmed.

The Supreme Court acknowledges the aid of Attorneys Norton Standeven and H. R. Duncan in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Standeven and approved by Mr. Duncan, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, BUSBY, and PHELPS, JJ., concur.