**Harve A. BYFORD, Appellant,**

v.

**TOWN OF ASHER, Oklahoma, Appellee.**

**No. 75849.**

Supreme Court of Oklahoma.

May 10, 1994.

46

Elvin J. Brown, Norman, for appellant.

Ed Cadenhead, Elsener & Cadenhead, Seminole, for appellee.

SUMMERS, Justice:

On a Christmas night Plaintiff Harve Byford fell and broke his ankle in a deeply rutted, poorly maintained alley behind his home in Asher. He sued the Town for his damages, alleging compliance with the Governmental Tort Claims Act, 51 O.S. 1991 § 151 et. seq. The Town did not contest Plaintiff's allegations of compliance with that Act. The case went to trial, and at the conclusion of Plaintiff's evidence the trial court sustained the Town's demurrer, ruling that as a matter of law Plaintiff had assumed the risk of his injury. The Court of Appeals affirmed. We reverse and send the case back for resolution by a jury.

Plaintiff's house is separated from his father's by the alley in question. Plaintiff was disabled by a prior injury which had required many surgeries, and which left his right leg several inches shorter than the left. He walked with a cane and wore a leg brace. That night he needed to use his father's telephone, and crossed the alley for that purpose. Finding his father's home dark he returned toward his own. He knew general-

ly of the state of disrepair of the alley, and proceeded cautiously, but stepped into a rut or hole he asserts was more than a foot deep, breaking the ankle on his bad leg. The bones would not mend, and a few months later the leg was amputated below the knee.

Plaintiff testified that he had on at least two occasions spoken with town officials and workmen about repairing the alley. A town councilman confirmed receiving Plaintiff's complaints and reported them, but said it had not been repaired. A town maintenance worker testified that the condition of the alley had worsened over the last few years since the Town's installation of a sewer pipe in the alley. The evidence showed that the Town had occasionally tended to the alley and mowed it, but had never done any extensive work to repair the ruts and gullies. Two witnesses testified they would not attempt to drive their vehicles through the alley. Byford stated that the only light for the alley was one he installed, and for which he paid the electricity bill

After the presentation of plaintiff's evidence, the Town demurred to the evidence. The trial court sustained the demurrer, stating that even if it was the Town's responsibility to maintain the alley, the conditions were open and obvious, and Byford had assumed the risks of walking in the alley at night. The trial court thus determined that reasonable men could not differ in its conclusion that Plaintiff had fully assumed the risks of crossing the alley. The Court of Appeals agreed and affirmed. We view it differently and reverse.

■ In order for a trial court to correctly sustain a demurrer to the evidence all evidence and reasonable inferences therefrom which favor the party opposing the motion (the plaintiff) must be taken as true. *Blood v. R & R Engineering, Inc.*, 769 P.2d 144, 145 (Okla.1989); *Messler v. Simmons Gun Specialties*, 687 P.2d 121, 130 (Okla.1984). Any conflicting evidence which is favorable to the movant (the defendant) is disregarded. *Id.* If there is any evidence which tends to show a right to recover, the demurrer is

overruled and the case allowed to proceed. *Id.*, citing *Austin v. Wilkerson*, 519 P.2d 899 (Okla.1974); *Jack Healey Linen Serv. v. Travis*, 434 P.2d 924, 926 (Okla.1967). With these standards in mind we must now review the trial court's decision.

## OKLAHOMA CONSTITUTION ART. 23, § 6 AND ITS EXCEPTIONS

The Oklahoma Constitution provides in Article 23, Section 6, that "[t]he defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact, and shall, at all times, be left to the jury." We have honored the plain meaning of these words, and have repeatedly required the issue of assumption of risk to be submitted to the jury. *Foster v. Harding*, 426 P.2d 355 (Okla.1967); *C.R. Anthony Co. v. Williams*, 185 Okla. 564, 94 P.2d 836 (1939); *Joy v. Pope*, 175 Okla. 540, 53 P.2d 683 (1936); *Cosden Pipe Line Co. v. Berry*, 87 Okla. 237, 210 P. 141 (1922); *Dickinson v. Cole*, 74 Okla. 79, 177 P. 570 (1919).

■ We did recognize two exceptions to this constitutional rule in *Flanders v. Crane Co.*, 693 P.2d 602 (Okla.1984), and again acknowledged them in *Anderson v. Northwestern Elec. Co-op.*, 760 P.2d 188 (Okla.1988). First, the defense of assumption of risk need not be submitted to the jury if the plaintiff fails to present evidence showing primary negligence on the part of the defendant. *Flanders*, 693 P.2d at 606; *Anderson*, 760 P.2d at 191. Second, the defense need not be submitted to the jury where there are no disputed material facts and reasonable people exercising fair and impartial judgment could not reasonably reach differing conclusions. *Flanders*, 693 P.2d at 606; *Anderson*, 760 P.2d at 191.

### A. THE "LACK OF PRIMARY NEGLIGENCE" EXCEPTION

■ The Town first urges that Byford failed to present evidence which tended to show primary negligence by the Town.[1] Although called an "exception" to the constitu-

---

1. The trial court did not rely on this theory but we address it because this Court may affirm if the trial court relied on faulty rationale in reaching a correct result. *Matter of Estate of Bartlett*, 680 P.2d 369, 374 (Okla.1984); *Russell v. Flanagan*, 544 P.2d 510, 511 (Okla.1975).

tional provision, in reality it is a fundamental premise underlying all suits in negligence—without the primary negligence there can be no liability. The Town urges that it had no duty to maintain the alley, as it was not used by the public. However, the testimony showed that the Town had placed various power and utility lines and pipes in the alley. At times the Town had performed slight maintenance on the alley. The alley, while used primarily by Byford and his family, was accessible to the public and to the various town workers who installed the sewer pipe and performed maintenance.

The Town relies on *Town of Quapaw v. Holden,* 96 Okla. 281, 222 P. 680 (1924) as authority for the proposition that maintenance is not required if the alley is not used by the public. In *Quapaw,* an alley was dedicated and shown on the town plat, but had never been used by the town. A woman was injured in the platted alley and sued the town. The Court held that there was no duty on the part of the town to maintain the alley since it had never been used by the town or been opened to the public.

*Quapaw* is not controlling as to the present case, because here there was testimony that the dedicated alley was open to the public, although rarely used by it. The alley had also been used by the Town for the purpose of locating sewer and other utility lines, and had been subject to some maintenance by the Town. Furthermore, we have held in *Bannister v. Farmers Alliance Mut. Ins. Co.,* 630 P.2d 1279, 1281 (Okla.1981) that a city has a primary non-delegable duty to maintain its streets in a reasonably safe condition for the public. The test to determine whether the city was negligent is "whether or not such municipality, in the exercise of reasonable care and prudence, could have or should have, anticipated danger and damages to the traveling public using the way." *Rider v. City of Norman,* 476 P.2d 312, 313 (Okla.1970). The same standard of reasonable care on behalf of the municipality must extend also to alley ways.

The Town also urges that the conditions causing Plaintiff's injury were open and obvious. It relies on cases affirming judgments for defendant cities where plaintiffs fell on sidewalks. *Evans v. City of Eufaula,* 527 P.2d 329 (Okla.1974); *Rider v. City of Norman, supra.* In each of those cases, however, the Court pointed out that the plaintiff's view was clear, unobstructed, and in broad daylight. In *Evans* the crack in the sidewalk 1 to 1½ inches deep was held "trivial." Here we are unable to conclude from the record that the plaintiff's light bulb was so positioned that the depth of the ruts were open and obvious to him. Further, the ruts were deep enough that two witnesses testified they would not attempt to put their vehicles through the alley.

"The test of a municipality's negligence in a case such as here is whether or not such municipality, in the exercise of reasonable care and prudence, could have or should have, anticipated danger and damages to the traveling public using the way." *Rider,* 476 P.2d at 313. We find that, under the standard of review for demurrers to the evidence, construing reasonable inferences in favor of the plaintiff, Byford has presented evidence sufficient to show primary negligence on the part of the Town.

## B. THE "REASONABLE MINDS CAN NOT DIFFER" EXCEPTION

It is the second exception which was relied on by the trial court. The court, in ruling in favor of the Town of Asher, stated that reasonable minds could not differ as to Byford's assumption of the risk. The defense of assumption of risk may arise in one of three situations. *Thomas v. Holliday,* 764 P.2d 165, 168–69 (Okla.1988). The first is where a plaintiff expressly agrees that the defendant will not be held accountable for plaintiff's well being or lack thereof. The second is where the two parties stand in some sort of voluntary relationship by which the plaintiff assumes such a risk so as to destroy any duty which defendant might owe the plaintiff. The third involves voluntarily exposing oneself to a known danger, even though not negligent in so doing. In this situation he is deemed to have assumed the risk of his injury, but the defense here requires "a *subjective* standard in evaluating a plaintiff's knowledge, comprehension and ap-

preciation of the risk." *Id.* at 169.[2] Unlike contributory negligence, which since 1979 in Oklahoma must be *compared* to the primary negligence of the defendant, with the plaintiff's recovery reduced accordingly, *Bode v. Clark Equipment Co.,* 719 P.2d 824 (Okla. 1986); *Laubach v. Morgan,* 588 P.2d 1071 (Okla.1978); 23 O.S. 1991 § 13, the defense of assumption of risk may exist in the absence of negligence on the part of the plaintiff, and the defense still constitutes an absolute bar to recovery.

Generally, landowner liability falls within this second category involving a voluntary relationship. In *Thomas,* we explained the instances in which no duty is owed to the plaintiff because of the relationship between the plaintiff and defendant:

> Risk assumption is used in this sense to describe the occupier's lack of liability for open and obvious hazards on the land. An invitee 'assumes all normal and ordinary risks attendant upon the use of the premises, and the owner or occupant is under no legal duty to reconstruct or alter the premises so as to obviate known and obvious dangers.'

*Id.* at 168 n. 10, quoting *City of Tulsa v. Harman,* 148 Okla. 117, 299 P. 462, 468 (1931). The defense of assumption of risk is applicable to a "situation where two or more persons are associated together in, or enter as a matter of law into, some form of voluntary relationship whether by contract or otherwise (e.g. physician—patient, attorney—client, *landowner/occupier—entrant,* ballpark owner/participant—spectator, etc)." *Thomas,* 764 P.2d at 170 n. 16. (Emphasis added).[3]

It is this category of landowner—entrant "risk assumption" which the defendant Town urges bars Byford's recovery. The Town maintains that it, as owner of the alley, has no liability for the dangers in the alley because they were open and obvious. The Town argues that Byford, as an entrant on to the premises, assumed the risks of the obvious and open dangers presented by the conditions of the land.

We agree that Byford, as an entrant on to the Town's premises, assumed all normal or ordinary risks attendant upon the use of the premises, and the owner or occupant is under no legal duty to warn an invitee of a danger which was obvious and should have been observed in the exercise of ordinary care. *Beatty v. Dixon,* 408 P.2d 339, 343 (Okla. 1965) quoting *City of Tulsa v. Harman,* 148 Okla. 117, 299 P. 462 (1931). However, it is the Town's responsibility to maintain the alley in a reasonably safe condition. *Bannister,* 630 P.2d at 1281.

In *Anderson v. Northwestern Elec. Co-op., supra,* we held that the trial court's grant of summary judgment based on the assumption of risk defense was improper because reasonable minds could differ. The plaintiff brought suit against an electric co-operative and the manufacturer of an amp reclosure unit after he was severely shocked and burned while attempting to seal off a propane tank that was in contact with an overhead line. The plaintiff testified that he did not believe he would be shocked, that he thought the tank was no longer "hot". We held that "[t]hese beliefs, coupled with expert testimony indicating that his assumptions were not totally unreasonable, presented sufficient facts to create some doubt as to how reasonable people might determine the issue of assumption of the risk." *Anderson,* 760 P.2d at 192.

Our case is similar factually to *Jack Healey Linen, supra.* There an employee slipped and fell in a puddle of water inside the laundry plant. She was familiar with the plant and knew that the area in which she fell usually had a wet or damp floor, and at times had standing water. On the day she fell the water was deeper than usual. She

---

2. See *Thomas v. Holliday, supra,* for a thorough exposition of assumption of risk and its comparison to contributory negligence.

3. We have held the assumption of the risk doctrine applicable in a number of premises liability cases. *See, e.g. Briscoe v. Oklahoma Natural Gas Co.,* 509 P.2d 126 (Okla.1973) (assumption of the risk defense was available to defendant who urges that dangers were apparent and plaintiff had knowledge of the dangers); *Davis v. Whitsett,* 435 P.2d 592 (Okla.1967) (the defense of assumption of the risk was available only if the defendant landowner could show that the plaintiff has knowledge of the risks involved).

stepped in the puddle and slipped. We ruled that trial court properly refused to grant a directed verdict because, considering those inferences favorable to the plaintiff, there was conflict as to whether "the peril was obvious and apparent". *Id.* at 928.

Byford testified that he knew of the general conditions of the alley owned by the Town. He testified that on Christmas night the alley was lit by his light, that he was wearing a brace on his right leg, was walking with a cane, and was walking slowly because of the treacherous conditions and his bad leg. A reasonable inference from the testimony is that Byford believed he was able to minimize any risk in crossing the alley not only by proceeding slowly but by also wearing a brace, using a cane and lighting the alley. "[F]amiliarity with existing physical conditions which are responsible for a party's injury or mere knowledge of the danger without full appreciation of the risk will not bar recovery." *Anderson,* 760 P.2d at 192. We do not view the evidence in this case to be so one-sided that the constitutional provision may be disregarded.

## CONCLUSION

Byford presented evidence which, when taking all inferences in his favor as required by the standard of review for demurrers, are sufficient to present a claim for primary negligence. His evidence was also sufficient to create some doubt as to how reasonable people would decide the issue of whether he fully assumed the risks associated with crossing the alley. The exceptions to Article 23, Section 6's constitutional assurance of a jury's determination of the defense of assumption of the risk must be narrowly read, lest they swallow the rule. We find that the facts of this case do not place it within either of those two exceptions to Article 23, Section 6. The mandatory language of that Section requires that in this case the issue of assumption of risk be presented to a jury.

1. The terms of Art. 23, § 6, Okl. Const., are:

"The defense of contributory negligence or of *assumption of risk shall,* in all cases whatsoever, *be a question of fact,* and shall, at all times, be left to the jury." (Emphasis supplied.)

The judgment of the district court is reversed. The Court of Appeals' opinion is vacated and the case remanded for further proceedings consistent with this opinion.

OPALA, ALMA WILSON, KAUGER and WATT, JJ., concur.

HODGES, C.J., LAVENDER, V.C.J., and SIMMS and HARGRAVE, JJ., dissent.

OPALA, Justice, concurring.

The court holds today that the plaintiff's proof in this negligence case is sufficient to withstand a demurrer and reverses the trial court's judgment for the defendant. On the record before it, the court concludes that the evidence adduced by the plaintiff supports a claim rested on the primary negligence of the Town of Asher [city]. Because there is some doubt whether a reasonably prudent person would agree that the plaintiff "assumed the risks" associated with crossing a public alley, the court remands the cause, in accordance with the mandate of Art. 23, § 6, Okl. Const.,[1] for submission of the city's assumption-of-risk defense to the triers.

While I concur in the court's judgment *and in its opinion,* I write separately to reemphasize the essence of municipal liability for unsafe streets and to define the *true legal boundaries of the city's defense to the claim. The principles I add should be helpful to the judge when the action is reached for retrial.*

### I

### MUNICIPAL LIABILITY DIFFERS FROM PREMISES AND OTHER LIABILITY

The *distinct* nature of municipal liability for unsafe streets is best understood when it is compared with the liability of common carriers and that of land owners or occupiers. A common carrier owes to a passenger the highest degree of care,[2] whereas premises

2. The terms of 13 O.S. 1991 § 32 establish the duty owed to a passenger by a carrier for hire. Carriers "must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill." *Id.* Okla-

liability calls for a lesser level of duty. The latter varies with the entrant's status in the common-law classification system. *Municipal liability for unsafe streets differs from premises liability. Unlike the landowner, a city clearly bears an obligation to remedy open and obvious defects that may endanger the traveling public.*

### Premises Liability

A land possessor's (or an occupier's) liability in negligence for harm occurring upon the premises varies with the status of the entrant who complains of injury.[3] Entrants fall into three categories—trespasser,[4] licensee[5] or invitee.[6] The breadth of duty that marks out the limit of protection afforded an entrant expands or contracts with the beneficial interest of the possessor in the presence of the other upon the land.

By varying the duty of care vis-à-vis each of the three categories of entrants, the law applies to the land occupier a form of *diminished responsibility* in negligence for harm occasioned by defective conditions. The common law has not extended its principles of general negligence[7] to those harmed by dangers on the premises of others.[8] We rejected the notion of an across-the-board premises liability in *Sutherland v. Saint Francis*,[9] where we expressly declined the plaintiff's invitation to foist on Oklahoma the "California madness".[10]

homa jurisprudence teaches that (1) the degree of care required, the safeguards to be used, and the efforts to be exercised to prevent injury in each case differ with the facts presented and (2) whether a carrier has failed to use utmost care is a question of fact for the jury. *Oklahoma Ry. Co. v. Austin*, 201 Okl. 567, 207 P.2d 769, 771 (1949); *Chicago, R.I. & P. Ry. Co. v. Shelton*, 135 Okl. 53, 273 P. 988, 989 (1929); *Markwell v. Whinery's Real Estate, Inc.*, Okl., 869 P.2d 840, 844–845 (1994).

3. *Sutherland v. Saint Francis Hospital, Inc.*, Okl., 595 P.2d 780, 781 (1979), teaches that Oklahoma follows the common-law premises liability regime. *See also* Marsh, The History and Comparative Law of Invitees, Licensees and Trespassers, 69 L.Q.Rev. 182, 259 (1953).

4. In the common-law status-based classification system, the only duty owed a *trespasser* is to avoid injuring him wilfully or wantonly. *Woodis v. Oklahoma Gas and Elec. Co.*, Okl., 704 P.2d 483, 490 n. 10 (1985) (Opala, J., dissenting).

5. To a bare *licensee* the land possessor owes merely the duty to exercise reasonable care to disclose *known* dangerous defects which are unlikely to be discovered by the licensee. *Henryetta Construction Co. v. Harris*, Okl., 408 P.2d 522, 531 (1965). The possessor's duty applies to conditions or instrumentalities which "are in the nature of hidden dangers, traps, snares and the like." *Id.* at 525. Within this rule of liability a hidden danger need not be totally or partially obscured from vision or withdrawn from sight. The phrase is most generally used to denote *a condition that cloaks a reality of danger by its deceptively innocent appearance of safety.*

6. *Harris, supra* note 5, 408 P.2d at 531–532; *Jack Healey Linen Service Co. v. Travis*, Okl., 434 P.2d 924, 926–927 (1967); *Sutherland, supra* note 3,

595 P.2d at 783; *Rogers v. Hennessee*, Okl., 602 P.2d 1033, 1034 (1979). *Failure to remove known but obvious hazards* through alteration or reconstruction of the premises constitutes *no* breach of duty owed by a landowner or occupier. *Rogers, supra*, 602 P.2d at 1034; *Buck v. Del City Apartments, Inc.*, Okl., 431 P.2d 360, 365 (1967).

7. By the phrase *"general principles of negligence"* is meant that the same degree of care applies to everybody. Negligence that creates upon the land undue *risk of harm to others* would be actionable, no matter what the entrant's status. *Thomas v. Holliday By and Through Holliday*, Okl., 764 P.2d 165, 170 n. 16 (1988).

8. Neither historical antecedents nor modern policy considerations militate in favor of imposing the common law's trichotomous division of entrants upon the regime of municipal tort liability for unsafe streets. *See Marsh, supra* note 3 at 359–361. Oklahoma has refused to extend the traditional occupier's immunity *to a defendant* who is neither owner nor occupier. *See, e.g., Phillips Petroleum Co. v. Bartmess*, 181 Okl. 501, 76 P.2d 352, 353–354 (1937); *Earl W. Baker Utilities Co. v. Haney*, 203 Okl. 91, 218 P.2d 621, 623–624 (1950). For a discussion of the *distinction between occupiers and other defendants*, see Hughes, Duties to Trespassers: A Comparative Survey & Revaluation, 68 Yale L.J. 633 (1959).

9. *Supra* note 3, 595 P.2d at 782.

10. California (and some other states) have abolished the common-law system of premises liability. *Sutherland, supra* note 3, 595 P.2d at 782, citing *Rowland v. Christian*, 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561, 563–564 (1968); *Kenney v. Grice*, 171 Colo. 185, 465 P.2d 401, 403 (1970); *Mile High Fence Company v. Radovich*, 175 Colo. 537, 489 P.2d 308, 313 (1971). In those states, the landowner or occupier stands

Landowners (or occupiers) who fail to maintain their premises in a reasonably safe condition are not always liable to entrants. There is, for example, *no* duty to correct open and obvious defects. Toward the *invitee* the landowner must exercise reasonable care to keep the premises in a reasonably safe condition and to warn of *known defects* which are in the nature of hidden dangers, traps, snares, pitfalls and the like. The invitee, on the other hand, *must guard* against all normal or ordinary dangers incident to the use of the premises. *No* liability arises for injury from conditions so apparent or readily observable that one would reasonably expect them to be discovered. Whether harm from an *open and obvious* defect is actionable depends on the *objective standard of due care—i.e.,* whether under similar or like circumstances an ordinary prudent person would have been able to see the defect in time to avoid being injured.[11]

### Municipal Liability

Whenever the condition of a *street (or other public way)* is alleged to be unsafe, municipal liability for harm arising from it is governed by a *modified form* of common law's general negligence. Its *principles are neither co-extensive with nor identical to premises liability.* While a land occupier would not generally be held answerable for injury from an *unguarded, open and obvious danger,* yet a municipality might incur such

liability if the harm-causing defects were in the *direct flow of traffic,* vehicular or pedestrian, their presence was known or should have been known, and the injured person was unable to see the hazard in time to avoid it.[12] More importantly, in municipality liability for unsafe streets there *is no room for entrant classification. The same duty of care extends to all persons injured on public ways.*

Municipal responsibility rests on the obligation to exercise ordinary and reasonable care to keep the streets in a reasonably safe condition for public travel. The law does not make a municipality a guarantor of safe or unharmed travel. The duty cast is to remedy *dangerous defects* (a) in a reasonable time upon receiving actual notice of their existence, or (b) where the condition is shown to have existed for a sufficient length of time and under circumstances which would raise an inference that the defect ought to have been discovered and secured or repaired.[13] *The very same duty of care applies to a municipality's maintenance of its alleys.*[14]

The mere existence of a hole in an alley is not evidence of municipal negligence. It must be shown that the defect *rendered the street not reasonably safe for travelers exercising ordinary care and caution.* Whether the presence of a harm-dealing hole in a street will give rise to liability depends upon

---

liable for failure to use due care to maintain a reasonably safe premises, *no matter what the entrant's status.* For a discussion of the California rule and its adoption by other states, see Annot., 22 ALR4th 294 (1983).

11. *Harris, supra* note 5, 408 P.2d at 531; *Jack Healey Linen, supra* note 6, 434 P.2d at 927.

12. *Rider v. City of Norman,* Okl., 476 P.2d 312, 313 (1970). If *premises and municipal liability were co-extensive,* a city would not be under a duty to fill a sinkhole in the middle of the street nor would it be liable for injuries from such defect. It would be absurd to advance the notion that claims for injuries caused by open and obvious defects in a city street or alley are *never* actionable. If a city has been notified of a defect, or if enough time had elapsed for a municipality to become aware of its presence, the city might be liable to one who, unable to see the danger in time to avoid it, fell into a sinkhole. Whether the injured person could see the sink-

hole in time to avoid falling into it and whether the city had sufficient notice of the defect to place guards around the danger or otherwise secure it pending repair work would present fact issues for the trier. McQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS, §§ 54.90a, 54.94d (3d ed. 1985).

13. *Rider, supra* note 12, 476 P.2d at 313; *City of Hartshorne v. Carlomango,* Okl., 287 P.2d 696, 699 (1955); *Lane v. City of Tulsa,* Okl., 402 P.2d 908, 910 (1965); *Williams v. City of Bristow,* Okl., 350 P.2d 484, 487 (1960); *City of Seminole v. Mooring,* 185 Okl. 359, 91 P.2d 1091, 1093 (1939); *City of Ada v. Criswell,* 185 Okl. 517, 94 P.2d 838, 841 (1939); McQUILLIN, *supra* note 12, §§ 54.01, 54.02, 54.03b.

14. *City of Tallassee v. Harris,* 431 So.2d 1177, 1181 (Ala.1983); *Johnson v. City of Galena,* 163 Kan. 713, 186 P.2d 96, 97 (1947); *Fields v. Kansas City,* 358 S.W.2d 96, 99 (Mo.Ap.1962); *Barry v. City of Butte,* 115 Mont. 224, 142 P.2d 571, 573 (1943); *Ferguson v. City of Yakima,* 139

(a) whether it is a dangerous defect which renders passage in the usual mode and with ordinary care hazardous or unsafe, and (b) whether a municipality has failed to exercise reasonable care under the circumstances to repair or secure the *locus in quo*.[15] Should a hole be shown to be dangerous to travelers, a municipality would stand liable for resulting injury if it has failed to guard or fill the danger[16] *after* actual or constructive notice of its existence and sufficient time to act. In sum, to be actionable the defect must be dangerous, and the danger must be gauged by the objective standard of a reasonably prudent person.[17] If prudent persons might differ on whether the harm from a defect should have been anticipated, the case is one for the jury.[18]

A municipality is charged by statute with the duty of maintaining its streets, avenues, lanes and *alleys* in a condition fit for public use. 11 O.S. 1991 § 36–101.[19] A city's obligation to use ordinary care in repairing its streets and alleys cannot be evaded, suspended or cast upon others.[20] *In short,* a city is burdened with a *nondelegable responsibility* to keep its streets in a reasonable state of repair and in a condition reasonably safe for their intended use.

### The Present Case

*It is undisputed in the present case that the alley's dangerous condition had existed for a long time.* The plaintiff [Byford] had moved across the alley from his father's house in 1986 or 1987. The pathway was then in disrepair. Byford notified the city on at least two occasions in an effort to enlist its help. When his requests went unmet, he grated the defective spots himself with the use of a tractor. Occasionally he hauled in dirt and gravel. He stopped maintaining the alley when his tractor broke down.

On the evening of the injurious event an electric light attached to a pole in Byford's back yard was shining. Although some shadows appeared, Byford testified it was "lit enough." *While he was generally aware*

Wash. 216, 246 P. 287, 288 (1926); McQuillin, *supra* note 12, § 54.40 at 127–128.

**15.** *City of Okmulgee v. Bridges,* 185 Okl. 537, 94 P.2d 927, 929 (1939) (whether a hole is a dangerous menace or trivial defect is a jury question). A city has no duty to warn of "slight and trivial" defects, but is required to guard against danger it could or should have anticipated in the exercise of reasonable care. In *Evans v. City of Eufaula,* Okl., 527 P.2d 329, 332 (1974), the court held that a city is not liable if a defect in the sidewalk and alley curbing (a 1-½" crack) is slight and trivial and the pedestrian's view of the sidewalk is clear. *Evans* teaches that a "slight and trivial" defect is one from which a reasonably prudent person would not anticipate danger to the public using the way. If reasonable men might differ whether an accident should have been anticipated, the question of liability is one of fact for the jury. *Id.* at 332 (citing *Rider, supra* note 12). In *Haas v. Firestone Tire & Rubber Company,* Okl., 563 P.2d 620, 626 (1977), the court held that the city is not required to "guard the traveling public from normal hazards *such as puddles of water in the street.* But if the [body of] accumulated water is so wide and deep as to constitute a real danger *not reasonably to be anticipated by users* ..., the municipality has a duty to eliminate the hazard [o]r to warn of its presence."* (Emphasis mine.)

**16.** *City of Seminole, supra* note 13, 185 Okl. 359, 91 P.2d at 1094.

**17.** *Rider, supra* note 12, 476 P.2d at 313; *City of Guymon v. Eaton,* 193 Okl. 73, 141 P.2d 555, 556 (1943).

**18.** *Hartshorne, supra* note 13, 287 P.2d at 699; *Town of Okemah v. Lindsey,* 198 Okl. 114, 176 P.2d 489, 490–491 (1947); *Oklahoma City v. Marshall,* 197 Okl. 302, 169 P.2d 1020, 1021 (1946); *City of Tulsa v. Lewis,* 189 Okl. 470, 117 P.2d 784, 786 (1941); *Okmulgee, supra* note 15, 185 Okl. 537, 94 P.2d at 929; *City of Tulsa v. Frye,* 165 Okl. 302, 25 P.2d 1080, 1082 (1933).

**19.** The pertinent terms of 11 O.S. 1991 § 36–101 are:
"The title to streets, roads and public ways within the limits of a municipality which have been dedicated and accepted by the municipal governing body is held by the municipality in trust for public use and enjoyment.
A municipal governing body may, in the manner provided by law:
\* \* \* \* \* \*
3. Establish and change the grade of any street, avenue, lane, *alley* or other place;
4. Open, straighten, widen, extend or improve any street, avenue, lane, *alley* or other place by grading, paving, constructing, macadamizing, chatting or graveling, \* \* \*". (Emphasis added.)

**20.** *Bannister v. Farmers Alliance Mut. Ins. Co.,* Okl., 630 P.2d 1279, 1281 (1981); *City of Tulsa v. Macura,* 186 Okl. 674, 100 P.2d 269, 272 (1940); *City of Ada v. Burrow,* 171 Okl. 142, 42 P.2d 111, 112–113 (1935).

*there were holes and ruts in the alley, he did not daily check on its precise location or condition.* According to Byford, he was "trying his best to watch what he was doing" and "to pay the best attention to where he was going."

Because Byford was aware the alley was dangerous, he carried a cane for support as he proceeded to cross. He stepped on gravel "or something that gave way" and started sliding. Although he tried to steady himself with the cane, his foot landed in the bottom of a hole (10 to 15 inches deep) where his ankle broke on impact.

### Byford's Claim

Byford's proof is clearly sufficient to support *his theory* that the harm-dealing defect in the alley had a *deceptively innocent or harmless appearance*[21] *of solidity* until he stepped onto the very soft spot and the ground gave way, causing his foot to sink into the bottom of the hole.

Byford's *knowledge* of a defective condition *is not fatal to his recovery.* Whether his foreknowledge should have prevented the harm is to be measured by *the objective standard* of a reasonable man. There is no allegation he stepped into the hole *wilfully.* Byford's claim to the use of a reasonably safe alley is no less actionable than that of *any stranger who was without knowledge of the defective condition.*

### The City's Defense

The city's *primary* negligence can be drawn from these facts: (a) the defect may not be viewed as one of a "slight" dimension or quality, (b) the alley was in a dangerously unsafe condition, which had been reported to the city and (c) the substandard condition had been in place for a time sufficient to be secured by guards or to undergo repairs. In sum, the record reveals a long-standing presence of an unguarded, open and obvious defect of a dangerous character.

The city's defense appears to be that (a) the rut was an *open and obvious* danger, (b) Byford knew where it was located and could have avoided it, (c) he stepped into a known hazard and, (d) *ergo,* the injury he sustained was caused by his own negligence. This defense (alleging an "open and obvious" defect and "contributory negligence") raises clearly questions for the jury.[22]

## II

### THE CITY'S ASSUMPTION-OF-RISK DEFENSE

*Thomas v. Holliday* teaches that, as a tort defense concept, risk assumption is divisible into three categories—*express* assumption of risk,[23] *implied primary* assumption of risk[24] and *implied secondary* assumption of risk.[25] Whether the plaintiff's "consent to injury" is express or implied, the result is the same—the defendant is relieved of a legal duty to the plaintiff and cannot be held answerable for negligence.[26] *Cases falling into each of these three categories rest on the risk content in the activity pursued by the plaintiff.*

---

21. For a discussion of a condition that presents a "deceptively innocent appearance", see *Harris, supra* note 5, 408 P.2d at 531; *Jack Healey Linen, supra* note 6, 434 P.2d at 928.

22. *See, e.g., Harris, supra* note 5; *Jack Healey Linen, supra* note 6.

23. This category includes those cases where the plaintiff has expressly contracted with another not to sue for any future injuries which may be caused by another's negligence. *Thomas, supra* note 7, 764 P.2d at 168.

24. In this category are cases where the plaintiff has made *no* express agreement to release the defendant from future liability but is presumed to have consented to such release because he has voluntarily participated in a particular activity or situation which involves inherent and well-known risks. *Thomas, supra* note 7, 764 P.2d at 168.

25. In this category are those cases in which the plaintiff *implicitly* assumes the risk created by the plaintiff's negligence. Even though the defendant is found to be at fault, the plaintiff is barred from recovery on the ground that he knew of the unreasonable risk created by the defendant's conduct and *voluntarily chose to encounter that risk.* The plaintiff's conduct in those cases has been viewed as *functionally* similar to contributory negligence. *Thomas, supra* note 7, 764 P.2d at 168.

26. *Thomas, supra* note 7, 764 P.2d at 168; PROSSER AND KEETON ON THE LAW OF TORTS at 480–481.

The entrant's "risk assumption" is *at times* mistakenly used to state that the occupier bears no *liability* for open and obvious hazards on the land. *This manner of explaining the law confuses risk assumption with nonliability.* To avoid the resulting conceptual mess, it would be far more correct to state that the landowner *is generally not liable* to entrants for open and obvious defects instead of saying that the *entrant assumes all the risk of open and obvious hazards.*[27]

Because in an assumption-of-risk context there is always a suggestion that the plaintiff has expressly or impliedly consented to the harm by *engaging voluntarily* in an activity commonly associated with danger, *the assumption defense* has *no place* in municipal liability for unsafe streets unless the pedestrian be shown to have entered some *secured area visibly blocked from public use.* There is no unqualified duty on · the part of a pedestrian to avoid unguarded, open public ways which may be dangerous.[28] A person using a public way for the purpose for which it was designed—*i.e.,* walking—*cannot be regarded as engaged in an activity commonly or inherently associated with risk.*[29] For risk assumption to apply in the use of unsafe streets the element of danger must be drawn from some *posted warning of danger.* Had Byford entered an alley that was either blocked off or marked off limits to pedestrians, or had he stepped into a place that was secured by railings or some other means, the assumption-of-risk defense could be invocable. *Walking upon designated public ways may not be equated to skiing, skating, engaging in pugilistic contests or to some like hazardous activity.* Lastly, the element of *choice* or freedom of action, which is essential to invoking an *implied secondary assumption of risk,*[30] is never present when a pedestrian traverses an *unguarded, open public way.* Consideration of all these notions combine *to place this case beyond the legal limit of risk-assumption defense.*

*An unguarded,* though open and obvious danger, is not *per se* excluded from the range of municipal accountability for negligence. Each claim 'must stand on its own facts. If in a case like this a city were allowed to interpose an assumption-of-risk defense, *normal pedestrian use* of *open, unguarded public ways* would qualify in law as a hazardous activity associated with some implied danger. The obvious absurdity of that premise mandates its out-of-hand rejection.

## SUMMARY

Municipal responsibility 'for maintaining safe streets is based on a *modified* form of *general negligence regime* that is distinct from *premises* liability. Unlike the landowner, a city *may be liable* for injury from an unrepaired or unguarded—though open and obvious danger—if it had notice of the hazard's existence in sufficient time to secure or remove the danger.

A plaintiff's use of an *unbarricaded* alley with *known,* though *unguarded,* dangers is *legally risk-neutral.* The law casts *no* duty upon pedestrians to stay away from *imperfect* public passageways or those known to be *poorly maintained,* so long as these places remain *open* for pedestrian traffic.[31] Dimly lit or unlit *open* streets with *dangerous* but *unguarded* spots do not transmute ordinary pedestrian use into a *risk-laden activity.* The *risk* of injury from an *actionably unsafe condition* in an *open* street (of which a city *has* or *should have had notice* ) may not be shifted to individual users. The incidence of risk must fall on the municipality that bears

27.  *Thomas, supra* note 7, 764 P.2d at 168.

28.  The record makes it clear that the alley was not Byford's only access to his father's house. The city's defense that he should have *used an alternate route,* which was alleged to have been safer, presents no more than an element of contributory negligence.

29.  The activities for which risk may be assumed are those which a person can avoid—*i.e.,* skiing, skating or engaging in a pugilist event.

30.  For the elements of implied secondary assumption of risk, see *supra* note 25.

31.  Because the alley in this suit was an open public way, a city bore responsibility for its safe maintenance. *Bannister, supra* note 20, 630 P.2d at 1281; *Rider, supra* note 12, 476 P.2d at 313.

a *nondelegable duty* for the safety of its open public thoroughfares.

A city could escape liability for injury from an *unguarded,* "open and obvious" defect, in a street or alley (of which it should have known), if the jury should find that an ordinary prudent person—using that public passageway under like or similar circumstances as the plaintiff—would have seen the dangerous spot in time to avoid stepping or falling into it. The traveling public is rightfully to assume that *open streets* are free of *actionable hazards.* The presence of defects which are *not* actionable is to be regarded as *entirely consistent* with the law's imposable *safety* standards.

The assumption-of-risk defense is not *negative*—it does not rest on liability's *denial.* Rather, it is in the nature of *confession and avoidance.*[32] It forms a special exception from general liability for negligence. The defense, which is commonly associated with dangerous activities, express or implied, is not available *against pedestrians using open, unguarded public streets.* One who traverses an open street *after dark* does not assume the risk of injury from *actionable defects* in his way. Municipal liability for unsafe streets does not come to a sudden halt at sunset. "Assumption of risk" is *inappropriate and has no place in municipal liability* unless a pedestrian is shown to have entered into an area conspicuously blocked from public use.

The defendant does not appear to contend that, were it not for the risk the plaintiff had assumed, the harm-dealing defect would be actionable. Viewed in this light, the city's

defense in the case at bar is *not* confession and avoidance but a *denial of the defect's actionable character* (because it was "open and obvious"), coupled with the alleged *contributory* or *sole negligence* of the plaintiff (who stepped into a *non-actionable defect* or into one that was known to be there and could hence be avoided). *Risk assumption* is *clearly not* the *gravamen* of the city's response to Byford's claim. The city's defense is *negative,* while assumption advances an *affirmative defense.*[33] Because the claim and defense *both rest* on variable standards of safety, the liability's resolution presents a jury question.[34]

The plaintiff's proof establishes the city's primary negligence. The defendant had been put on notice of the alley's dangerous condition and neglected to secure or remove the defect over a long span of time. The city's *true* defense to the claim *is not risk assumption but (a) contributory* negligence and (b) the plaintiff's *sole* negligence in stepping into a *known danger.* The case clearly presents issues of disputed fact which must be resolved by the triers.

HODGES, Chief Justice, with whom LAVENDER, Vice Chief Justice and HARGRAVE, Justice, join, dissenting.

I must dissent from this Court's misapplication of Oklahoma law. The majority has failed to recognize that the issues of negligence and assumption of the risk become relevant only if a legal duty was owed. The city owed the plaintiff no duty to warn of the open and obvious condition of the alley. Thus, the majority's focus on the defense of

---

32. 12 O.S. 1991 § 2008(C)(3).

The law was the same under the now-defunct Code of Civil Procedure. Assumption of risk is an affirmative defense which the defendant must plead unless the issue is raised by the plaintiff's evidence. *S.H. Kress & Co. v. Maddox,* 201 Okl. 190, 203 P.2d 706, 709 (1949).

33. The city's answer brief states:

"Affirmative defenses pled by the Defendant are as follows:
3. Plaintiff *assumed the risk of injury* by attempting to traverse an unlighted alley known by him to be unlevel and dangerous;
4. Defendant had no duty to keep an alley in a safe condition, as an alley, where it has

never been used by the public as an alley or highway.
5. The defect, if any, was *open and obvious* to the Plaintiff. Plaintiff was contributorily negligent by his failure to use *care commensurate with* the danger of which he had knowledge." (Emphasis added.)

34. Whenever a negligence claim rests on a breached obligation of care whose standard is variable rather than legally fixed because it shifts with the circumstances of each case, the parameters of defendant's duty are undefined by law and the presence or absence of care that is the plaintiff's *due* tenders an issue for jury resolution. *Wetsel v. Independent School Dist. I–1,* Okl., 670 P.2d 986, 990–991 (1983).

assumption of the risk is misplaced. While it is true that the trial judge stated that the plaintiff had assumed the risk, he also specifically found "that the conditions that existed in the alley at that time were open and obvious...."

The rule that there is no duty to warn of open and obvious dangers is found not only in the law of premises liability but also in the law of municipal liability. A municipality's duty of care to the traveling public does not extend to normal hazards which can be readily discernable. *Evans v. City of Eufaula,* 527 P.2d 329, 332 (Okla.1974). Only when the hazard is "not reasonably to be anticipated by users of the street [does] a municipality [have] a duty to eliminate the hazard or warn of its presence." *Haas v. Firestone Tire & Rubber Co.,* 563 P.2d 620, 626 (Okla. 1976).

The plaintiff's own evidence demonstrated that although an alley had been platted where the plaintiff fell, the area was not used by the city or the public as an alleyway. It could reasonably be anticipated that an unpaved area which functioned more as a private drive between two houses might have a rut in it. Evidence presented at trial also revealed that the condition of the area was not only open and obvious, but was actually known to the plaintiff. It makes no difference whether the plaintiff voluntarily assumed the risk because the city had no duty to protect him from the open and obvious rut in the alley. No constitutional provision was implicated and none should have been applied to the facts of this case. The city should not be forced to warn of open and obvious dangers in an undeveloped area used as a private alleyway.